

OCT 2 5 2010

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | | |
|---|---|---|
| JOSEPH ANTONETTI, | ) | |
| Plaintiff, | ) | 3: 10-cv-00158-ECR-RAM |
| vs. | ) | **ORDER** |
| HOWARD SKOLNIK, *et al*, | ) | |
| Defendants. | ) | |

Plaintiff, who is a prisoner in the custody of the Nevada Department of Corrections, has submitted a civil rights complaint pursuant to 42 U.S.C. § 1983 (#1-2). The Court has screened plaintiff's civil rights complaint pursuant to 28 U.S.C. § 1915A and finds that it must be dismissed in part.

## I.    Screening Pursuant to 28 U.S.C. § 1915A

Federal courts must conduct a preliminary screening in any case in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. *See* 28 U.S.C. § 1915A(a). In its review, the Court must identify any cognizable claims and dismiss any claims that are frivolous, malicious, fail to state a claim upon which relief may be granted or seek monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. § 1915A(b)(1),(2). Pro se

1    pleadings, however, must be liberally construed. *Balistreri v. Pacifica Police Dep't*, 901 F.2d. 696,

2    699 (9th Cir. 1988).  To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two essential

3    elements: (1) that a right secured by the Constitution or laws of the United States was violated, and

4    (2) that the alleged violation was committed by a person acting under color of state law. *See West v.*

5    *Atkins*, 487 U.S. 42, 48 (1988).

6         In addition to the screening requirements under § 1915A, pursuant to the Prison Litigation

7    Reform Act of 1995 (PLRA), a federal court must dismiss a prisoner's claim, "if the allegation of

8    poverty is untrue," or if the action "is frivolous or malicious, fails to state a claim on which relief

9    may be granted, or seeks monetary relief against a defendant who is immune from such relief."  28

10   U.S.C. § 1915(e)(2).  Dismissal of a complaint for failure to state a claim upon which relief can be

11   granted is provided for in Federal Rule of Civil Procedure 12(b)(6), and the Court applies the same

12   standard under § 1915 when reviewing the adequacy of a complaint or an amended complaint.

13   When a court dismisses a complaint under § 1915(e), the plaintiff should be given leave to amend

14   the complaint with directions as to curing its deficiencies, unless it is clear from the face of the

15   complaint that the deficiencies could not be cured by amendment. *See Cato v. United States*, 70

16   F.3d. 1103, 1106 (9th Cir. 1995).

17        Review under Rule 12(b)(6) is essentially a ruling on a question of law. *See Chappel v.*

18   *Laboratory Corp. of America*, 232 F.3d 719, 723 (9th Cir. 2000).  Dismissal for failure to state a

19   claim is proper only if it is clear that the plaintiff cannot prove any set of facts in support of the claim

20   that would entitle him or her to relief. *See Morley v. Walker*, 175 F.3d 756, 759 (9th Cir. 1999).  In

21   making this determination, the Court takes as true all allegations of material fact stated in the

22   complaint, and the Court construes them in the light most favorable to the plaintiff. *See Warshaw v.*

23   *Xoma Corp.*, 74 F.3d 955, 957 (9th Cir. 1996).   Allegations of a pro se complainant are held to less

24   stringent standards than formal pleadings drafted by lawyers. *See Hughes v. Rowe*, 449 U.S. 5, 9

25   (1980); *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam).  While the standard under Rule

26   12(b)(6) does not require detailed factual allegations, a plaintiff must provide more than mere labels

2

1    and conclusions. *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1964-65 (2007). A formulaic

2    recitation of the elements of a cause of action is insufficient. *Id., see Papasan v. Allain*, 478 U.S.

3    265, 286 (1986).

4         All or part of a complaint filed by a prisoner may therefore be dismissed *sua sponte* if the

5    prisoner's claims lack an arguable basis either in law or in fact. This includes claims based on legal

6    conclusions that are untenable (e.g., claims against defendants who are immune from suit or claims

7    of infringement of a legal interest which clearly does not exist), as well as claims based on fanciful

8    factual allegations (e.g., fantastic or delusional scenarios). *See Neitzke v. Williams*, 490 U.S. 319,

9    327-28 (1989); *see also McKeever v. Block*, 932 F.2d 795, 798 (9th Cir. 1991).

10   **II.     Screening of the Complaint**

11          **Defendants**

12          The Civil Rights Act under which this action was filed provides:

13              Every person who, under color of [state law]    . . . subjects, or causes
                to be subjected, any citizen of the United States. . . to the deprivation
14              of any rights, privileges, or immunities secured by the Constitution. . .
                shall be liable to the party injured in an action at law, suit in equity, or
15              other proper proceeding for redress. 42 U.S.C. § 1983.

16   The statute plainly requires that there be an actual connection or link between the actions of the

17   defendants and the deprivation alleged to have been suffered by plaintiff. *See Monell v. Department*

18   *of Social Services*, 436 U.S. 658 (1978); *Rizzo v. Goode*, 423 U.S. 362 (1976). The Ninth Circuit has

19   held that "[a] person 'subjects' another to the deprivation of a constitutional right, within the

20   meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts or

21   omits to perform an act which he is legally required to do that causes the deprivation of which

22   complaint is made." *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978).

23          **Count I**

24          In count one, plaintiff alleges violations of his Eighth Amendment right to be free of cruel

25   and unusual punishment, based on deprivation of needed mental health care. He claims that he is

26   housed in segregation/isolation, which has lead to a mental health breakdown. He claims that in five

3

1   years, he has been seen by mental health professionals at total of eight times, instead of every ninety

2   days as required by NDOP administrative regulations.  Plaintiff claims that prison mental health

3   professionals have recommended that he pursue art and music for his mental health, but defendants

4   have refused to provide him with the necessary drawing materials.  He claims that defendants' failure

5   to provide him with regular mental health care is a deliberate and wanton infliction of pain and

6   demonstrates deliberate indifference. Plaintiff claims that the mental health professionals at the

7   prison have suggested that he take anti-psychotic and anti-depression medications, which he states

8   would not be necessary but for defendants' neglect and indifference.  He further claims that he has

9   been made to suffer bouts of aggression, extreme depression, voices, paranoia, hallucinations,

10  emotional breakdowns and distress, unreasonable fear, and systematic dehumanization which leaves

11  him not knowing who he is as a person or whether he is human anymore.

12          To constitute cruel and unusual punishment in violation of the Eighth Amendment, prison

13  conditions must involve "the wanton and unnecessary infliction of pain." *Rhodes v. Chapman*, 452

14  U.S. 337, 347 (1981).  Although prison conditions may be restrictive and harsh, prison officials must

15  provide prisoners with food, clothing, shelter, sanitation, medical care, and personal safety. *Id.*;

16  *Toussaint v. McCarthy*, 801 F.2d 1080, 1107 (9th Cir. 1986); *Hoptowit v. Ray*, 682 F.2d 1237, 1246

17  (9th Cir. 1982).  Where a prisoner alleges injuries stemming from unsafe conditions of confinement,

18  prison officials may be held liable only if they acted with "deliberate indifference to a substantial risk

19  of serious harm." *Frost v. Agnos*, 152 F.3d 1124, (9th Cir. 1998) (citing *Farmer v. Brennan*, 511

20  U.S. 825, 835 (1994).  The deliberate indifference standard involves an objective and a subjective

21  prong.  First, the alleged deprivation must be, in objective terms, "sufficiently serious." *Farmer v.*

22  *Brennan*, 511 U.S. at 834 (citing *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)).  Second, the prison

23  official must "know of and disregard an excessive risk to inmate health or safety." *Id.* at 837.  Thus,

24  "a prison official may be held liable under the Eighth Amendment for denying humane conditions of

25  confinement only if he knows that inmates face a substantial risk of harm and disregards that risk by

26  failing to take reasonable measures to abate it." *Farmer v. Brennan*, 511 U.S. at 835.  Prison

4

1    officials may avoid liability by presenting evidence that they lacked knowledge of the risk, or by

2    presenting evidence of a reasonable, albeit unsuccessful, response to the risk. *Id.* at 844-45. Mere

3    negligence on the part of the prison official is not sufficient to establish liability, but rather, the

4    official's conduct must have been wanton. *Farmer v. Brennan*, 511 U.S. at 835; *Frost v. Agnose*,

5    152 F.3d at 1128; *see also Daniels v. Williams*, 474 U.S. 327, 33 (1986).

6        The Eight Amendment's proscription against cruel and unusual punishment prohibits

7    penalties which are grossly disproportionate to the offense. *Estelle v. Gamble*, 429 U.S. 97, 102

8    (1976). Placing a prisoner in isolation can amount to cruel and unusual punishment, depending on

9    the particular conditions and circumstances. *See Rhodes v. Chapman*, 452 U.S. 337, 101 S.Ct. 2392

10   (1981). The court finds that plaintiff has stated a colorable Eighth Amendment conditions of

11   confinement claim, based on isolation.

12       A prisoner's claim of inadequate medical care does not constitute cruel and unusual

13   punishment unless the mistreatment rises to the level of "deliberate indifference to serious medical

14   needs." *Estelle v. Gamble*, 429 U.S. at 106. The "deliberate indifference" standard involves an

15   objective and a subjective prong. First, the alleged deprivation must be, in objective terms,

16   "sufficiently serious." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (citing *Wilson v. Seiter*, 501

17   U.S. 294, 298 (1991)). Second, the prison official must act with a "sufficiently culpable state of

18   mind," which entails more than mere negligence, but less than conduct undertaken for the very

19   purpose of causing harm. *Farmer v. Brennan*, 511 U.S. at 837. A prison official does not act in a

20   deliberately indifferent manner unless the official "knows of and disregards an excessive risk to

21   inmate health or safety." *Id.*

22           In applying this standard, the Ninth Circuit has held that before it can be said that a

23   prisoner's civil rights have been abridged, "the indifference to his medical needs must be substantial.

24   Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action."

25   *Broughton v. Cutter Laboratories*, 622 F.2d 458, 460 (9th Cir. 1980), *citing Estelle*, 429 U.S. at

26   105-06. "[A] complaint that a physician has been negligent in diagnosing or treating a medical

1   condition does not state a valid claim of medical mistreatment under the Eighth Amendment.

2   Medical malpractice does not become a constitutional violation merely because the victim is a

3   prisoner." *Estelle v. Gamble*, 429 U.S. at 106; *see also Anderson v. County of Kern*, 45 F.3d 1310,

4   1316 (9th Cir. 1995); *McGuckin v. Smith*, 974 F.2d 1050, 1050 (9th Cir. 1992), *overruled on other*

5   *grounds, WMX Techs., Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997)(en banc).  Even gross

6   negligence is insufficient to establish deliberate indifference to serious medical needs.  *See Wood v.*

7   *Housewright*, 900 F.2d 1332, 1334 (9th Cir. 1990).  A prisoner's mere disagreement with diagnosis

8   or treatment does not support a claim of deliberate indifference. *Sanchez v. Vild*, 891 F.2d 240, 242

9   (9th Cir. 1989).

10         Deliberate indifference can be manifested by prison guards intentionally denying or delaying

11   access to medical care or intentionally interfering with the treatment once prescribed. *Estelle v.*

12   *Gamble*, 429 U.S. at 104-05.  However, where a prisoner alleges a delay in receiving medical

13   treatment, the prisoner must allege that the delay led to further injury. *McGuckin v. Smith*, 974 F.2d

14   1050, 1060 (9th Cir. 1992), *overruled on other grounds, WMX Techs, Inc. v. Miller*, 104 F.3d 1133,

15   1136 (9th Cir. 1997); *Shapely v. Nevada Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir.

16   1985).

17         The Courts of other federal Circuits have also found deliberate indifference where prison

18   officials ignore a previous physician's treatment plan. *White v. Napoleon*, 897 F.2d 103 (3rd Cir.

19   1990)(finding cognizable claim for deliberate indifference where prison officials ignored private

20   hospital's treatment orders and refused inmate's access to prescribed medication); *Gill v. Mooney*,

21   824 F.2d 192 (2nd Cir. 1987)(finding cognizable claim where prison officials refused to permit

22   plaintiff to participate in exercise program prescribed by doctor); *Eades v. Thompson*, 823 F.2d 1055

23   (7th Cir. 1987)(finding cognizable claim where prisoner alleged that prison officials made him travel

24   and carry a heavy box, causing a surgical incision to gape open, in violation of prior medical orders);

25   *Martinez v. Mancusi*, 443 F.2d 921 (2nd Cir. 1970), *cert. denied* 401 U.S. 983, *cited with approval*

26   *by Estelle v. Gamble*, 429 U.S. at 105 n.10 (finding deliberate indifference where prison staff forced

post-surgical prisoner-patient to walk, ignoring warnings from hospital personnel that inmate should not be moved); *see also* Carl T. Drechsler, Annotation, *Relief Under Federal Civil Rights Acts to State Prisoners Complaining of Denial of Medical Care*, 28 A.L.R. Fed. 279 (1976)(recognizing that, on the whole, courts do not condone the practice of prison officials ignoring orders rendered by a prisoner's previous physician). This court finds that under the facts alleged in count one, plaintiff has stated a colorable Eighth Amendment medical care claim.

**Count 2**

In count two, plaintiff alleges violations of his rights under the First, Fifth, Sixth, and Fourteenth Amendments related to freedom of speech, access to the courts, and deprivation of due process and law library access. Plaintiff claims that he has been housed in segregation for several years, and has been repeatedly denied materials such as books, paper, pens, and envelopes, as well as assistance from a law clerk and help with research. Plaintiff alleges that defendants have deprived him of these things both by direct refusal and by policy. Arguing that proper law library access is required for proper and meaningful access to the courts, plaintiff argues that defendants' failures have prevented him from being properly prepared for court. He claims that as a result, his habeas corpus petitions and civil rights actions have been dismissed.

A prisoner alleging a violation of his right of access to the courts must demonstrate that he has suffered "actual injury." *Lewis v. Casey*, 518 U.S. 343, 349-50 (1996). The right to access the courts is limited to direct criminal appeals, habeas corpus proceedings, and civil rights actions challenging conditions of confinement. *Id.* at 354-55. "An inmate cannot establish relevant actual injury simply by establishing that his prison's law library or legal assistance program is sub-par in some theoretical sense." *Id.* at 351. Rather, the inmate "must go one step further and demonstrate that the library or legal assistance program hindered his efforts to pursue a legal claim." *Id.* The actual-injury requirement mandates that an inmate "demonstrate that a nonfrivolous legal claim had been frustrated or was being impeded." *Id.* at 353. In *Lewis v. Casey*, the Supreme Court defined prisoners' right of access to the courts as simply the "right to bring to court a grievance." *Id.* at 354.

1   The Court specifically rejected the notion that the state must enable a prisoner to "litigate effectively

2   once in court." *Id.* (quoting and disclaiming language contained in *Bounds v. Smith*, 430 U.S. 817,

3   825-26 (1977)); *see also Cornett v. Donovan*, 51 F.3d 894, 898 (9th Cir. 1995) (determining that

4   prisoners' right of access to the courts is limited to the pleading stage of a civil rights action or

5   petition for writ of habeas corpus).   The court finds that under the facts alleged by plaintiff in count

6   two, he states a colorable First Amendment access to courts claim.

7        **Count III**

8        In count three, plaintiff alleges a violation of the Eighth Amendment, based on the

9   deprivation personal hygiene items and the sanitary conditions of the prison. He claims that he is

10  regularly deprived of toilet paper and soap, and so cannot maintain personal hygiene.   He states that

11  he is allowed a shower only twice a week, and is made to strip in dirty showers, full of filth and

12  insects. He claims that the unit in which he resides is filthy and littered with food and urine.   He

13  states that there are open sewers, and that insects and rodents are rampant.   Plaintiff claims that he

14  has suffered illness resulting from these conditions.   The court finds that under the standard set forth

15  above, plaintiff has stated a colorable Eighth Amendment claim based on conditions of confinement.

16  *See Anderson v. County of Kern*, 45 F.3d 1310, 1314 (9th Cir. 1995) (severe or prolonged exposure of

17  prisoner to lack of sanitation can constitute an Eighth Amendment violation); *Keenan v. Hall*, 83

18  F.3d 1083, 1091 (9th Cir. 1996), *amended by* 135 F.3d 1318 (9th Cir. 1998) (indigent inmates have

19  the right to personal hygiene items such as toothbrushes and soap).

20       **Count IV**

21       In count four, plaintiff alleges an Eighth Amendment violation based on lack of outside

22  exercise.  Plaintiff alleges that he is subjected to a policy which provides a minimum of five hours

23  outside exercise per week, although the relevant administrative regulation provides for a minimum of

24  seven hours and a controlling consent degree provides for a minimum of eight hours. Plaintiff alleges

25  that he is routinely given only two to three hours outside exercise per week.

26       "Deprivation of outdoor exercise violates the Eighth Amendment rights of inmates confined

8

1 to continuous and long-term segregation." *Keenan v. Hall*, 83 F.3d 1083, 1089 (9th Cir. 1996)

2 (citing *Spain v. Procunier*, 600 F.2d 189, 199 (9th Cir. 1979)), *amended by* 135 F.3d 1318 (9th Cir.

3 1998). The court finds that plaintiff has stated a colorable Eighth Amendment conditions of

4 confinement claim, based on lack of outdoor exercise.

5      **Count V**

6      In count five, plaintiff alleges violations of his rights under the First and Fourteenth

7 Amendments based on the deprivation incoming mail, without notice and without a post-deprivation

8 remedy. Plaintiff claims that defendants have confiscated, withheld and returned mail from friends

9 and family as well as publications from legitimate vendors.

10      The mere fact that prison officials open and conduct a visual inspection of a prisoner's legal

11 correspondence does not state a claim for violation of a prisoner's constitutional rights. *See Wolff v.*

12 *McDonnell*, 418 U.S. 539, 576-77 (1974); *Mitchell v. Dupnick*, 75 F.3d 517, 523 (1996). However,

13 prisoners have a First Amendment right to send and receive mail. *Witherow v. Paff*, 52 F.3d 264,

14 265 (9th Cir. 1995).

15      An authorized, intentional deprivation of property is actionable under the Due Process

16 Clause. *See Hudson v. Palmer*, 468 U.S. 517, 532, n.13 (1984)(citing *Logan v. Zimmerman Brush*

17 *Co.*, 455 U.S. 422 (1982)); *Quick v. Jones*, 754 F.2d 1521, 1524 (9th Cir. 1985). An authorized

18 deprivation is one carried out pursuant to established state procedures, regulations, or statutes.

19 *Logan v. Zimmerman Brush Co.*, 455 U.S. at 436; *Piatt v. McDougall*, 773 F.2d 1032, 1036 (9th Cir.

20 1985); *see also Knudson v. City of Ellensburg*, 832 F.2d 1142, 1149 (9th Cir. 1987). Authorized

21 deprivations of property are permissible if carried out pursuant to a regulation that is reasonably

22 related to a legitimate penological interest. *Turner v. Safley*, 482 U.S. 78, 89 (1987). The court finds

23 that under the facts alleged, plaintiff has stated both a First Amendment claim and a Fourteenth

24 Amendment claim based on deprivation and confiscation of incoming mail.

25      **Count VI**

26      Plaintiff alleges violations of his First Amendment right to send mail. He claims that under

the policies and procedures at High Desert State Prison, to obtain materials for writing letters or court documents, an indigent prisoner must prove indigent status and then get on an indigent list. Plaintiff states that this process can take two to three months. Plaintiff alleges that as a result of these policies or the improper training of employees, he has been denied the ability to send both personal and legal mail. The court finds that plaintiff's allegations state a colorable First Amendment claim based on denial of the right to send mail.

**Count VII**

In count seven, plaintiff alleges violations of his Fifth and Fourteenth Amendment rights to equal treatment and due process. He claims that he is housed in administrative segregation at High Desert State Prison, and has never been given proper classification. He states that he has been placed in administrative segregation for an indeterminate length of time without any process, review, or rational. Plaintiff also claims that he is treated differently than other prisoners in this regard, based on his crime, race, religion, and political beliefs.

Equal protection claims arise when a charge is made that similarly situated individuals are treated differently without a rational relationship to a legitimate state purpose. *See San Antonio School District v. Rodriguez*, 411 U.S. 1 (1972). In order to state a § 1983 claim based on a violation of the equal protection clause of the Fourteenth Amendment, a plaintiff must allege and that defendants acted with intentional discrimination against a class of inmates which included plaintiff. *Lowe v. City of Monrovia*, 775 F.2d 998, 1010 (9th Cir. 1985); *Federal Deposit Ins. Corp. v. Henderson*, 940 F.2d 465, 471 (9th Cir. 1991). The court finds that the allegations in count seven state a colorable Fourteenth Amendment equal protection claim.

In order to state a cause of action for deprivation of procedural due process, a plaintiff must first establish the existence of a liberty interest for which the protection is sought. In *Sandin v. Connor*, 115 S.Ct. 2293, 2300 (1995), the Supreme Court abandoned earlier case law which had held that states created protectable liberty interests by way of mandatory language in prison regulations. *Id.* at 2299-2300. Instead, the Court adopted an approach in which the existence of a liberty interest

10

1   is determined by focusing on the nature of the deprivation. *Id.* In doing so, the Court held that

2   liberty interests created by prison regulations are limited to freedom from restraint which "imposes

3   atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.*

4   at 2300. In applying this standard, the Court in *Sandin* held that ten days in disciplinary segregation

5   did not constitute a deprivation in which a state might create a liberty interest. The Due Process

6   Clause itself does not confer on inmates a liberty interest in being confined in the general prison

7   population instead of administrative segregation. *See Hewitt v. Helms*, 459 U.S. 460, 466-68 (1983).

8    However, the *Sandin* decision appears to leave open the question of whether, under different

9   conditions of confinement from those found in *Sandin*, an inmate could have a liberty interest in

10  freedom from confinement in administrative segregation or SHU. Thus, in determining whether the

11  threshold test of *Sandin* is met, the circumstances of the particular state's prison system are relevant.

12   Under the facts alleged in count seven, plaintiff states a colorable due process claim based on failure

13  to provide periodic review of his classification.

14       **Count VIII**

15       In count eight plaintiff alleges violations of the "5th, 8th and 14th Amendment rights to be free

16  of arbitrary abuse of authority and punishment." Relying on the same facts alleged in support of

17  count seven, plaintiff claims that he has been subjected to cruel and unusual punishment.

18  Specifically, plaintiff claims that by being housed in administrative segregation, he is subjected to all

19  the punitive measures placed on inmates in disciplinary segregation. These include yard restrictions,

20  spending restrictions, movement and use of restraint restrictions and implementations, strip searches,

21  cell searches, visiting restrictions, program restrictions, social restrictions, less food and poorer

22  quality food, and no exercise equipment.  He concludes that placement in administrative segregation

23  amounts to punishment without due process.

24       The court finds that to the extent plaintiff alleges an Eighth Amendment claim, it is

25  subsumed within the due process claim.   To the extent that plaintiff alleges a due process violation,

26  his claim is duplicative of count seven. The court will therefore dismiss count eight as duplicative.

**Count IX**

In count nine plaintiff alleges deprivation of property without due process in violation of the Fourth, Fifth and Fourteenth Amendments.  Plaintiff claims that he has suffered a "shake down"of his cell in which various items were taken from him and deemed to be contraband.  Plaintiff states that he believed these items to be authorized, and had in fact purchased the items at the prison or had been given the items by employees of the prison.  Plaintiff claims that he was not notified of any rule changes and that the rules are not posted.  He claims that he was told he had no right to be made aware of or obtain a copy of rules and policies/procedures or regulations.  He states that he was deprived of his property, given no notice that the items were unauthorized, given disciplinary sanctions, and was forced to forfeit his own property with no post-deprivation remedy.   The court finds that under the standard set forth above in connection with count five, plaintiff states a Fourteenth Amendment due process claim for intentional, authorized deprivation of property.

**Count X**

In count ten, plaintiff alleges violations of the Eight Amendment prohibition against cruel and unusual punishment.  He states that he is housed in High Desert State Prison in administrative segregation, subject to 24 and 23 hour lockdown in a cell with a steel door.  Plaintiff claims that defendants disconnected the intake vent which pulls dust and allergens from the cells.  He claims that although dirty and dusty vent blow dirt into the cells, there is no circulation system pulling the dirty air out.  Plaintiff further claims that the "air" is not on in the summer and the heat is not on in the winter.  Plaintiff states that as a result of these conditions, he suffers cracked lips and nostrils which bleed and refuse to heal, as well as difficulty in breathing and sleeping.  The court finds that under the standard set forth above in count one, plaintiff has stated an Eighth Amendment claim based on conditions of confinement.

**Count XI**

In count eleven, plaintiff alleges violations of his First Amendment right to free exercise of his religion.  Plaintiff claims that he is a devout, practicing fundamentalist Christian and has been

1   denied access to a priest, a place of worship, communion, confessional, and congregation with those

2   of his faith.  Plaintiff states that he has thereby been denied forgiveness, connection to his god and

3   chances at atonement.  Plaintiff further claims that he has been denied the kosher diet that is in

4   accordance with his beliefs.  He states that inmates who practice a wide variety of other religions are

5   given assistance with the exercise of their religions, yet plaintiff is denied the ability to practice his,

6   thereby putting his immortal soul in jeopardy.

7        The First Amendment to the United States Constitution provides that Congress shall make no

8   law respecting the establishment of religion, or prohibiting the free exercise thereof.  U.S. Const.,

9   amend. I.  The United States Supreme Court has held that prisoners retain their First Amendment

10  rights, including the right to free exercise of religion.  *O'Lone v. Estate of Shabazz*, 482 U.S. 342,

11  348 (1987).  The Court has also recognized that limitations on a prisoner's free exercise rights arise

12  from both the fact of incarceration and from valid penological objectives.  *Id.; McElyea v. Babbit*,

13  833 F. 2d 196, 197 (9th Cir. 1987).

14       Prison regulations alleged to infringe on the religious exercise right must be evaluated under

15  the "reasonableness" test set forth in *Turner v. Safley*, 482 U.S. 78, 89-91 (1987). *O'Lone*, 382 U.S.

16  at 349; *Freeman v. Arpaio*,125 F.3d 732, 736 (9th Cir. 1997)(recognizing that the United States

17  Supreme Court's decision in *City of Boerne v. P.F. Flores*, 521 U.S. 507 (1997), invalidated the

18  Religious Freedom Restoration Act and restored the "reasonableness test" as the applicable standard

19  in free exercise challenges brought by prison inmates).

20       In determining the reasonableness of a challenged restriction on First Amendment rights, the

21  court considers four factors.  First, there must be a valid, rational connection between the prison

22  regulation and the legitimate government interest put forward to justify it, and the governmental

23  objective must itself be a legitimate and neutral one.  A second consideration is whether alternative

24  means of exercising the right on which the regulation impinges remain open to prison inmates.  A

25  third consideration is the impact accommodation of the asserted right will have on guards, other

26  inmates, and the allocation of prison resources.  Finally, the absence of ready alternatives is evidence

13

1    of the reasonableness of a prison regulation. *Allen v. Toombs*, 827 F.2d 563, 567 (9th Cir. 1987)

2    (citing *Turner v. Safley*, 482 U.S. at 89-91). The court finds that under this standard, plaintiff states

3    a colorable First Amendment free exercise claim in count eleven.

4        **Count XII**

5       In count twelve, plaintiff alleges violations of his Fifth Amendment right to due equal

6    protection and due process, his Eighth Amendment right to be free of cruel and unusual punishment,

7    and his Fourteenth Amendment right to due process, all in connection with the food provided to him

8    by the prison.

9       Setting out the alleged facts in detail, Plaintiff claims that he is provided food of less

10   nutritional value, less quality, and less caloric value than the food provided to other inmates at High

11   Desert State Prison. Plaintiff further claims that prison officers make trays of food from dirty food

12   carts located next to inmate showers, and that birds pick at the inmates' food while the food carts are

13   outside. He states that the amount of food provided is inadequate and that he suffers from weight

14   loss, lack of energy, and perpetual hunger, which he feels is a form of punishment. The court finds

15   that count twelve states a colorable Eighth Amendment conditions of confinement claim, under the

16   standard set forth in count one. Count twelve does not state a due process claim upon which relief

17   can be granted.

18        **Count XIII**

19       In count thirteen, plaintiff alleges violations of his Fourth Amendment right to be free of

20   unlawful searches and his Eighth Amendment right to be free of cruel and unusual punishment in

21   connection with public and unhygienic strip searches. Plaintiff claims that whenever he is moved

22   from his cell to any other location, he is made to stand in a brightly lit shower in full view of female

23   employees, made to strip naked, place his bare feet on a filthy floor covered with hair, scum and

24   insects, spread his buttocks, lift his penis, and then put his fingers in his mouth, all without any

25   opportunity to wash his hands. Plaintiff asserts that this is entirely unnecessary, because inmates are

26   in full restraints, escorted and solitary at all times. Plaintiff states that to avoid this "needless, filthy,

14

1  dehumanizing practice," he is forced to refuse to leave his cell.  He states that this has resulted in

2  mental and physical degeneration.

3       Generally, strip searches do not violate the Fourth Amendment rights of prisoners.  *See*

4  *Michenfelder v. Sumner*, 860 F.2d 328, 333-34 (9th Cir. 1988).  However, strip searches that are

5  "excessive, vindictive, harassing, or unrelated to any legitimate penological interest," may be

6  unconstitutional.  *Id.* at 332.  The court finds that under the facts alleged, plaintiff states a colorable

7  Fourth Amendment claim based on unreasonable searches.

8       Searches intended to harass may violate the Eighth Amendment.  *See Hudson v. Palmer*, 468

9  U.S. 517, 530 (1984).  In considering such a claim, the court must ask: 1) if the officials acted with a

10  sufficiently culpable state of mind; and 2) if the alleged wrongdoing was objectively harmful enough

11  to establish a constitutional violation.  *Hudson v. McMillan*, 503, U.S. 1, 8 (1992).  The court finds

12  that under the facts alleged, plaintiff has stated a colorable Eighth Amendment claim.

13  **Count XIV**

14       In count fourteen, plaintiff alleges a violation of his rights under the Fourth and Eighth

15  Amendments.  He claims that officers search his cell any time he leaves his cell, and that the officers

16  throw away personal belongings, with no notice, paperwork, or post-deprivation remedy.  Prisoners

17  have no Fourth Amendment right of privacy in their cells.  *See Hudson v. Palmer*, 468 U.S. 517,

18  525-26 (1984).  Accordingly, plaintiff's Fourth Amendment claim in count fourteen based on an

19  allegation of an unreasonable search will be dismissed for failure to state a claim upon which relief

20  can be granted.  Similarly, plaintiff's allegations do not state a colorable claim for relief under the

21  Eighth Amendment prohibition against cruel and unusual punishment.  Thus, that claim will be

22  dismissed also.  However, the court finds that under the standard set forth above in connection with

23  count five, plaintiff states a Fourteenth Amendment due process claim for intentional, authorized

24  deprivation of property.

25  **Count XV**

26       In count fifteen, plaintiff alleges violations of his Fifth and Fourteenth Amendment rights to

1  due process and his Eighth Amendment right not to be subjected to cruel and unusual punishment.

2  He claims that he is in segregation under no sentence, but rather is in "ad seg." He states that as a

3  maximum custody inmate, he is subject to 24 and 23 hour lockdown for years and years. Plaintiff

4  claims that he is denied the programs and privileges, and access to rehabilitation, social and exercise

5  programs that other inmates are allowed and are provided by state and federal law. Plaintiff claims

6  that although he has not suffered a disciplinary violation, he is arbitrarily kept in isolation and treated

7  as if he were in disciplinary segregation.

8       The Eighth Amendment prohibits punishment which involves the unnecessary and wanton

9  infliction of pain, is grossly disproportionate to the severity of the crime or serves no justifiable

10 penological interest. *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981). Isolating an inmate under

11 circumstances that warrant discipline is not necessarily unconstitutional. *Hutto v. Finney*, 437 U.S.

12 678, 685 (1978). However, conditions of confinement which include extreme isolation and

13 environmental deprivation can support an Eighth Amendment claim. *See Madrid v. Gomez*, 889

14 F.Supp. 1146 (1995). Accordingly, the court finds that count fifteen states a colorable Eighth

15 Amendment claim.

16      In order to state a cause of action for deprivation of procedural due process, a plaintiff must

17 first establish the existence of a liberty interest for which the protection is sought. In *Sandin v.*

18 *Connor*, 515 U.S. 472, 487 (1995), the Supreme Court abandoned earlier case law which had held

19 that states created protectable liberty interests by way of mandatory language in prison regulations.

20 *Id.* Instead, the Court adopted an approach in which the existence of a liberty interest is determined

21 by focusing on the nature of the deprivation. *Id.* In doing so, the Court held that liberty interests

22 created by prison regulations are limited to freedom from restraint which "imposes atypical and

23 significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 484. The

24 court finds that under the facts alleged in count fifteen, plaintiff states a colorable Fourteenth

25 Amendment due process claim based on his arbitrary placement in circumstances that amount to

26 disciplinary segregation for a period of many, many years, without a disciplinary violation.

**Count XVI**

In count sixteen, plaintiff alleges that he has been deprived of his Fourteenth Amendment rights to due process and equal protection, and of his Fifth Amendment right to equal protection. Plaintiff claims that he was arbitrarily classified to "max custody," based on his crime and sentence. A prisoner has no due process right to a particular classification status. *Hernandez v. Johnston*, 833 F.2d 1316, 1318 (9th Cir. 1987). Thus, count sixteen does not state a due process claim for relief on which relief can be granted.

Plaintiff claims that he is treated differently than inmates with similar convictions and sentences, and that the classification system is unfair and unevenly applied. Plaintiff alleges that defendants have classified him differently, and continue to deny him reclassification based on his race, and political and religious beliefs, as well as his crime. The court finds that under the standard set forth above in count seven, plaintiff states a colorable equal protection claim.

**Count XVII**

In count seventeen, plaintiff alleges violations of his Eighth Amendment right to be free of cruel and unusual punishment and his Fifth Amendment right to equal protection. Plaintiff alleges that the exercise provided him at High Desert State Prison is to stand in a completely enclosed cage alone, in extreme heat or cold with no water, no shade, no exercise equipment and no urinals.  He states that because of these conditions, he has suffered sunburns and cracked and bleeding lips, and a lack of any desire to exercise. Plaintiff claims that as a result, he as lost physical and mental health. He believes that this is a punishment, rather than a privilege. The court finds that under the standard set forth above in connection with count one, plaintiff states a colorable Eighth Amendment conditions of confinement claim based on the right to exercise. The court further finds that under the standard set forth in count  seven, plaintiff does not state an equal protection claim in count seventeen.

**Count XVIII**

In count eighteen, plaintiff alleges violations of his Fifth, Eight, and Fourteenth Amendment

1 rights to "be free of arbitrary government action" and cruel and unusual punishment, and "to receive

2 equal treatment." Plaintiff claims that he has been made to walk great distances in restraints, causing

3 cuts, bleeding and scaring of his ankles. He further claims that inmates have been murdered, beaten,

4 stabbed, assaulted and brutalized while in restraints and under escort. Plaintiff states that inmates

5 under restraint have been left helpless and unable to defend themselves, and have been walked

6 through groups of inmates who are not restrained at all. Plaintiff claims that defendants are

7 completely indifferent to this obvious risk and threat to inmate safety, and states that he does not

8 want to be the next victim. The court finds that plaintiff has alleged the required deliberate

9 indifference to a substantial risk of serious harm and so has stated a colorable Eighth Amendment

10 claim based on conditions of confinement. The court finds that plaintiff's allegations in count

11 eighteen do not support either an equal protection or a due process claim.

12 **Count XIX**

13 In count nineteen, plaintiff alleges violations of the Eighth Amendment, based on conditions

14 of confinement. Plaintiff claims that he is forced to endure unhygienic conditions, including getting

15 a shower only every three days in a filthy shower. The court finds that these claims are duplicative

16 of those made in count three. Count nineteen will therefore be dismissed on that basis.

17 **Count XX**

18 In count twenty, plaintiff alleges violations of his Fifth and Fourteenth Amendment rights to

19 equal protection and due process and "to be free of arbitrary use of authority." Plaintiff claims that

20 defendants refuse to provide him with copies of institutional policies or administrative regulations.

21 Plaintiff claims that he has served eighteen years in the Nevada Department of Prisons and that

22 defendants' institutional policies are not in accordance with the administrative regulations and that

23 the administrative regulations are not in accordance with the Nevada Revised Statutes and state and

24 federal laws.

25 Plaintiff claims that defendants routinely add rules through institutional policies or

26 administrative regulations which deprive inmates, needlessly and only for purposes of punishment,

18

1    of privileges, various items of property, access to programs and exercise, religious services, law

2    library access, redress of grievances and social activities.  He claims that defendants have removed

3    kites and grievances from units, denied grievances with senseless answers, made inmates wait

4    months past the time due for responses, and then suggested that plaintiff provide proof or copies of

5    items impossible to obtain.  Plaintiff claims that defendants have refused to allow grievances to

6    proceed to higher levels and have completely abused their positions and have impeded inmates'

7    ability to pursue justice.  Plaintiff asserts that he is suffering arbitrary abuse of authority and

8    retaliation for pursuit of justice.

9         As stated above, equal protection claims arise when a charge is made that similarly situated

10   individuals are treated differently without a rational relationship to a legitimate state purpose.  *See*

11   *San Antonio School District v. Rodriguez*, 411 U.S. at 1.   Plaintiff does not make such an allegation

12   in count twenty, thus the court concludes that count twenty does not state an equal protection claim.

13        Plaintiff makes several allegations concerning the grievance system at High Desert State

14   Prison.  Because prisoners have no constitutional right to an inmate grievance system, plaintiff's

15   allegations concerning the workings of the grievance system at High Desert State Prison do not state

16   a constitutional claim.

17        Plaintiff alleges that defendants refuse to provide him with copies of institutional policies and

18   administrative regulations.  The court finds that these allegations, standing alone, do not state either a

19   equal protection or due process claim.  Plaintiff, however, also alleges retaliation for his "pursuit of

20   justice."  Allegations of retaliation against a prisoner's First Amendment rights to speech or to

21   petition the government may support a section 1983 claim.  *Rizzo v. Dawson*, 778 F.2d 527, 532 (9th

22   Cir. 1985); *see also Valandingham v. Bojorquez*, 866 F.2d 1135 (9th Cir. 1989).  To establish a

23   prima facie case, plaintiff must allege and show that defendants acted to retaliate for his exercise of a

24   protected activity, and defendants' actions did not serve a legitimate penological purpose.  *See*

25   *Barnett v. Centoni*, 31 F.3d 813, 816 (9th Cir. 1994); *Pratt v. Rowland*, 65 F.3d 802, 807 (9th Cir.

26   1995).  A plaintiff asserting a retaliation claim must demonstrate a "but-for" causal nexus between

1   the alleged retaliation and plaintiff's protected activity (i.e., filing a legal action).  *McDonald v. Hall*,

2   610 F.2d 16, 18 (1st Cir. 1979); *see Mt. Healthy City School Dist. Bd. of Educ. v. Doyle*, 429 U.S.

3   274 (1977).  The prisoner must submit evidence, either direct or circumstantial, to establish a link

4   between the exercise of constitutional rights and the allegedly retaliatory action.  *Pratt*, 65 F.3d at

5   806.  Timing of the events surrounding the alleged retaliation may constitute circumstantial evidence

6   of retaliatory intent.  *See Soranno's Gasco, Inc. v. Morgan*, 874 F.2d 1310, 1316 (9th Cir. 1989).

7   The court finds that under the facts alleged in count twenty, plaintiff states a colorable retaliation

8   claim.

9         **Count XXI**

10         In count twenty-one, plaintiff alleges that his civil rights were violated based on "wilful,

11   intentional and deliberate infliction or physical and emotional distress."  Plaintiff realleges and

12   incorporates the facts from counts one through twenty.  The court finds count twenty-one to be

13   largely duplicative of earlier claims in the complaint, and otherwise insufficient to state a claim upon

14   which relief can be granted.  It will therefore be dismissed for failure to state a claim.

15         **Count XXII**

16         In count twenty-two, plaintiff alleges that his civil rights were violated based on "deliberate

17   indifference, negligent and wanton infliction of pain."   Plaintiff realleges and incorporates the facts

18   from counts one through twenty.   The court finds count twenty-two to be largely duplicative of

19   earlier claims in the complaint, and otherwise insufficient to state a claim upon which relief can be

20   granted.

21         **Count XXIII**

22         In count twenty-three, plaintiff alleges that his First Amendment right of freedom of

23   association was violated, based on denial of visitation.  He states that he was twice denied visitation

24   with his mother, absent cause.

25         It is settled law that prisoners have no absolute right to unfettered visitation.  *Kentucky v.*

26   *Dep't of Correction, v. Thompson*, 490 U.S. 454, 460 (1989); *Keenan v. Hall*, 83 F.3d 1083, 1092

1   (9th Cir. 1996). Moreover, the Supreme Court has in recent years concluded that a prisoner has a

2   liberty interest protected by the Due Process Clause only where the restraint "imposes atypical and

3   significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v.*

4   *Connor*, 515 U.S. 472, 483-84 (1995). Denial of visitation privileges for a matter of weeks or even

5   months would likely not impose an atypical or significant hardship of the type that creates a liberty

6   interest under *Sandin*.

7         First Amendment associational rights are related to the freedom to associate with groups of a

8   particular type, often political or religious in nature. *See Pell v. Procunier,* 417 U.S. 817, 822

9   (1974); *Rizzo v. Dawson*, 778 F.2d 527, 532 (9th Cir. 1985). The court finds as a matter of law that

10   the denial by prison authorities of two personal visits with his mother does not impact plaintiff's

11   First Amendment right to freedom of association. Count twenty-three will therefore be dismissed for

12   failure to state a claim upon which relief can be granted.

13        **Count XXIV**

14         In count twenty-four, plaintiff alleges that his Fifth and Fourteenth Amendment rights to

15   equal treatment and procedural due process are violated by restitution practices at the prison.

16   Plaintiff claims that there is no hearing, proof, receipt or review of ordered restitution. He states that

17   he is charged with restitution, and has no idea what for. He also claims that he was ordered to pay

18   restitution for "state sweat pants," although no such thing exists.

19         It is well-settled that a prisoner has a constitutionally protected property interest in his prison

20   inmate account. *Quick v. Jones*, 754 F.2d 1521, 1523 (9th Cir. 1984). An authorized, intentional

21   deprivation of property is actionable under the Due Process Clause. *See Hudson v. Palmer*, 468 U.S.

22   517, 532, n.13 (1984)(citing *Logan v. Zimmerman Brush Co.*, 455 U.S. 422 (1982)). An authorized

23   deprivation is one carried out pursuant to established state procedures, regulations, or statutes.

24   *Logan v. Zimmerman Brush Co.*, 455 U.S. at 436; *Piatt v. McDougall*, 773 F.2d 1032, 1036 (9th Cir.

25   1985); *see also Knudson v. City of Ellensburg*, 832 F.2d 1142, 1149 (9th Cir. 1987). Authorized

26   deprivations of property are permissible if carried out pursuant to a regulation that is reasonably

1    related to a legitimate penological interest. *Turner v. Safley*, 482 U.S. 78, 89 (1987). The court finds

2    that plaintiff's allegations state a colorable due process claim. The court further finds that in count

3    twenty-four, plaintiff fails to state an equal protection claim upon which relief can be granted.

4         **Count XXV**

5         In count twenty-five, plaintiff alleges violations of his Fifth and Fourteenth Amendment due

6    process rights and right to be from arbitrary exercise of authority, based on the fact that John and

7    Jane Doe defendants have banned smoking in the Nevada Department of Corrections. Plaintiff

8    claims that this ban was instituted arbitrarily, with intent to punish, and without any real benefit or

9    service. Plaintiff claims that the banning of smoking has created an angry environment and a

10   security threat, as it has created a new contraband item. He claims that inmates smuggle tobacco,

11   and that other inmates pay $5 to $10 for a cigaret. Plaintiff claims that until the recent ban, inmates

12   in the Nevada Department of Corrections were allowed to smoke.

13        In order to state a cause of action for deprivation of procedural due process, a plaintiff must

14   first establish the existence of a liberty interest for which the protection is sought. In *Sandin v.*

15   *Connor*, 515 U.S. 472, 487 (1995), the Supreme Court abandoned earlier case law which had held

16   that states created protectable liberty interests by way of mandatory language in prison regulations.

17   *Id.* Instead, the Court adopted an approach in which the existence of a liberty interest is determined

18   by focusing on the nature of the deprivation. *Id.* In doing so, the Court held that liberty interests

19   created by prison regulations are limited to freedom from restraint which "imposes atypical and

20   significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 484.

21        The court finds that the health benefits conferred by not smoking are no longer subject to

22   debate. Further, it is established law that housing a prisoner in an environment that exposes him to

23   environmental tobacco smoke may support an Eighth Amendment claim. *See McKinney v.*

24   *Anderson*, 989 F.2d 853, 853 (9th Cir. 1992), *aff'd Helling v. McKinney*, 509 U.S. 25, 235 (1993).

25   The court therefore finds that the prohibition of smoking in prisons cannot amount to an atypical and

26   significant hardship on prisoners so as to support a due process claim. Accordingly, count twenty-

22

1    five will be dismissed for failure to state a claim upon which relief can be granted.

2

3            **IT IS THEREFORE ORDERED** that the Clerk of the Court shall **FILE** the complaint.

4    (Docket #1-2.)

5            **IT IS FURTHER ORDERED** that plaintiff's motion to for enlargement is **GRANTED**.

6    (Docket #1-1.)

7            **IT IS FURTHER ORDERED** that count eight is **DISMISSED** as duplicative.

8            **IT IS FURTHER ORDERED** that count twelve states a colorable Eighth Amendment

9    conditions of confinement claim.  All other claims in count twelve are **DISMISSED** for failure to

10   state a claim upon which relief can be granted.

11           **IT IS FURTHER ORDERED** that count fourteen states a colorable Fourteenth Amendment

12   due process claim for intentional, authorized deprivation of property.  All other claims in count

13   fourteen are dismissed for failure to state a claim upon which relief can be granted.

14           **IT IS FURTHER ORDERED** that count sixteen states a colorable Fourteenth Amendment

15   equal protection claim.  All other claims in count sixteen are dismissed for failure to state a claim

16   upon which relief can be granted.

17           **IT IS FURTHER ORDERED** that count seventeen states a colorable Eighth Amendment

18   conditions of confinement claim.  All other claims in count seventeen are dismissed for failure to

19   state a claim upon which relief can be granted.

20           **IT IS FURTHER ORDERED** that count eighteen states a colorable Eighth Amendment

21   claim based on conditions of confinement.  All other claims in count eighteen are dismissed for

22   failure to state a claim upon which relief can be granted.

23           **IT IS FURTHER ORDERED** that count nineteen is **DISMISSED** as duplicative.

24           **IT IS FURTHER ORDERED** that count twenty states a colorable First Amendment

25   retaliation claim.  All other claims in count twenty are dismissed for failure to state a claim upon

26   which relief can be granted.

1    **IT IS FURTHER ORDERED** that count twenty-one is **DISMISSED** for failure to state a

2   claim upon which relief can be granted.

3    **IT IS FURTHER ORDERED** that count twenty-two is **DISMISSED** for failure to state a

4   claim upon which relief can be granted.

5    **IT IS FURTHER ORDERED** that count twenty-three is **DISMISSED** for failure to state a

6   claim upon which relief can be granted.

7    **IT IS FURTHER ORDERED** that count twenty-four states a colorable Fourteenth

8   Amendment due process claim based on an authorized, intentional deprivation of property.  All other

9   claims in count twenty-four are dismissed for failure to state a claim upon which relief can be

10   granted.

11    **IT IS FURTHER ORDERED** that count twenty-five is **DISMISSED** for failure to state a

12   claim upon which relief can be granted.

13    **IT IS FURTHER ORDERED** as follows:

14   1. The Clerk **shall electronically serve a copy of this order, including the attached Notice**

15   **of Intent to Proceed with Mediation form, along with a copy of plaintiff's complaint, on the**

16   **Office of the Attorney General of the State of Nevada, to the attention of Pamela Sharp**.

17   2. The Attorney General's Office shall advise the Court within **twenty-one (21) days** of the

18   date of entry of this order whether it can accept service of process for the named defendants.  As to

19   any of the named defendants for which the Attorney General's Office cannot accept service, the

20   Office shall file, *under seal*, the last known address(es) of those defendant(s).

21   3. If service cannot be accepted for any of the named defendant(s), plaintiff shall file a

22   motion identifying the unserved defendant(s), requesting issuance of a summons, and specifying a

23   full name and address for said defendant(s).  Plaintiff is reminded that, pursuant to Rule 4(m) of the

24   Federal Rules of Civil Procedure, service must be accomplished within one hundred twenty (120)

25   days of the date the complaint was filed.

26   4. If the Attorney General accepts service of process for any named defendant(s), such

defendant(s) shall file and serve an answer or other response to the complaint within **thirty (30) days** following the date of the early inmate mediation.  If the court declines to mediate this case, an answer or other response shall be due within **thirty (30) days** following the order declining mediation.

5. The parties **SHALL DETACH, COMPLETE, AND FILE** the attached Notice of Intent to Proceed with Mediation form on or before **thirty (30) days** from the date of entry of this order.

**IT IS FURTHER ORDERED** that henceforth, Plaintiff shall serve upon defendants or, if an appearance has been entered by counsel, upon their attorney(s), a copy of every pleading, motion or other document submitted for consideration by the court.  Plaintiff shall include with the original paper submitted for filing a certificate stating the date that a true and correct copy of the document was mailed to the defendants or counsel for defendants.  If counsel has entered a notice of appearance, the plaintiff shall direct service to the individual attorney named in the notice of appearance, at the address stated therein.  The Court may disregard any paper received by a district judge or magistrate judge which has not been filed with the Clerk, and any paper received by a district judge, magistrate judge or the Clerk which fails to include a certificate showing proper service.

DATED:  *October 25, 2010:*

*Edward C. Reed*
_____
UNITED STATES DISTRICT JUDGE

25

1

Name

2

Prison Number (if applicable)

3

Address

4

5

6

UNITED STATES DISTRICT COURT

7

DISTRICT OF NEVADA

8

9
_____ , )   Case No. _____
                 Plaintiff,      )

10
v.                               )   **NOTICE OF INTENT TO**
                                 )   **PROCEED WITH MEDIATION**
11
_____  )
12                               )
                 Defendants.     )
13 _____)

14      This case may be referred to the District of Nevada's early inmate mediation program.  The
purpose of this notice is to assess the suitability of this case for mediation.  Mediation is a process by
15 which the parties meet with an impartial court-appointed mediator in an effort to bring about an
expedient resolution that is satisfactory to all parties.
16

17  1.   Do you wish to proceed to early mediation in this case? _____ Yes _____ No

18  2.   If no, please state the reason(s) you do not wish to proceed with mediation? _____

19       _____

20       _____

21       _____

22  3.   List any and all cases, including the case number, that plaintiff has filed in federal or state
         court in the last five years and the nature of each case. (Attach additional pages if needed).
23

24       _____

25       _____

26       _____

    4.   List any and all cases, including the case number, that are currently pending or any pending

26

grievances concerning issues or claims raised in this case. (Attach additional pages if needed).

_____

_____

_____

_____

5.   Are there any other comments you would like to express to the court about whether this case is suitable for mediation.  You may include a brief statement as to why you believe this case is suitable for mediation.  (Attach additional pages if needed).

_____

_____

_____

_____

**This form shall be filed with the Clerk of the Court on or before twenty  (20) days from the date of entry of this order.**

Counsel for defendants: By signing this form you are certifying to the court that you have consulted with a representative of the Nevada Department of Corrections concerning participation in mediation.

Dated this _____ day of _____, 2010.


_____
Signature


_____
Name of person who prepared or
helped prepare this document