1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

JOSEPH ANTONETTI,                    )      3:10-cv-00158-LRH-WGC
                                     )
              Plaintiff,             )      **REPORT AND RECOMMENDATION**
                                     )      **OF U.S. MAGISTRATE JUDGE**
       vs.                           )
                                     )
HOWARD SKOLNIK, et. al.              )
                                     )
                                     )
              Defendants.            )
_____      )

       This Report and Recommendation is made to the Honorable Larry R. Hicks, Senior United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR IB 1-4. Before the court is Defendants' Partial Motion to Dismiss and Motion for Partial Summary Judgment. (Doc. # 109.)[1] Plaintiff has opposed the motion (Doc. # 115, Suppl. at Doc. # 124), and Defendants filed a reply (Doc. # 133).

       After a thorough review, the court recommends that Defendants' motion be granted in part and denied in part.

## I. BACKGROUND

**A. Status of Claims**

       At all relevant times, Plaintiff Joseph Antonetti was an inmate in custody of the Nevada Department of Corrections (NDOC). (Pl.'s Compl., Doc. # 9 at 1.) The events giving rise to this action took place while Plaintiff was housed at High Desert State Prison (HDSP). (*Id.*) The remaining Defendants are: Isidro Baca, Charlene Clarkson, Darin Cool, James Cox, Adrian

_____

[1] Refers to court's docket number.

1  Hendley, James Henson, William Kuloloia, Richard Liverani, Efrain Lona, Cole Morrow,
2  Dwight Neven, Howard Skolnik, and Jeffrey Walker.

3       Plaintiff's original complaint was filed and screened by the court. (*See* Screening Order,
4  Doc. # 6, and Pl.'s Compl., Doc. # 9.) The procedural history following the filing of the
5  complaint is summarized in great detail in two previous report and recommendations issued
6  by the court, and need not be repeated here. (*See* Docs. # 125 at 1-3, # 127 at 1-4.)

7       At the present time, the action is proceeding as to the following claims and defendants:

| Count | Claim(s) | Defendant(s) |
| --- | --- | --- |
| 1 | Eighth Amendment claim based on medical care and isolation | Clarkson, Cool, Hendley, Liverano, Lona, Morrow |
| 2 | First Amendment access to courts | Baca, Clarkson, Cool, Cox, Hendley, Hensen, Kuoloia, Liverani, Lona, Morrow, Neven, Skolnik, Walker |
| 3 | Eighth Amendment conditions of confinement related to personal hygiene | Baca, Clarkson, Cool, Cox, Hendley, Hensen, Kuoloia, Liverani, Lona, Morrow, Neven, Skolnik, Walker |
| 4 | Eighth Amendment conditions of confinement related to the alleged denial of outdoor exercise | Clarkson, Cool, Hendley, Liverani, Lona, Morrow |
| 5 | First and Fourteenth Amendment related to deprivation and confiscation of incoming mail | Baca, Clarkson, Cool, Cox, Hendley, Hensen, Kuoloia, Liverani, Lona, Morrow, Neven, Skolnik, Walker |
| 6 | First Amendment related to denial fo the right to send mail | Baca, Clarkson, Cool, Cox, Hendley, Hensen, Kuoloia, Liverani, Lona, Morrow, Neven, Skolnik, Walker |

2

| 7 | Equal protection related to being treated differently than other prisoners based on his crime, race, religion and political beliefs, and due process claim related to the failure to provide periodic review of classification to segregation | Clarkson, Cool, Hendley, Liverani, Lona, Morrow |
|---|---|---|
| 9 | Fourteenth Amendment due process related to the intentional, authorized deprivation of property | Baca, Clarkson, Cool, Cox, Hendley, Hensen, Kuoloia, Liverani, Lona, Morrow, Neven, Skolnik, Walker |
| 10 | Eighth Amendment conditions of confinement related to alleged conditions of his cell in segregation | Baca, Clarkson, Cool, Cox, Hendley, Hensen, Kuoloia, Liverani, Lona, Morrow, Neven, Skolnik, Walker |
| 11 | First Amendment free exercise of religion | Baca, Clarkson, Cool, Cox, Hendley, Hensen, Kuoloia, Liverani, Lona, Morrow, Neven, Skolnik, Walker |
| 12 | Eighth Amendment conditions of confinement related to food provided to him at HDSP | Clarkson, Cool, Hendley, Liverani, Lona, Morrow |
| 13 | Fourth Amendment based on alleged unreasonable search and Eighth Amendment related to search allegedly intended to harass | Clarkson, Cool, Hendley, Liverani, Lona, Morrow |
| 14 | Fourteenth Amendment due process related to the intentional, authorized deprivation of property when Plaintiff leaves his cell | Baca, Clarkson, Cool, Cox, Hendley, Hensen, Kuoloia, Liverani, Lona, Morrow, Neven, Skolnik, Walker |
| 15 | Eighth Amendment conditions of confinement and Fourteenth Amendment due process related to housing in segregation | Clarkson, Cool, Hendley, Liverani, Lona, Morrow |

3

| 16 | Equal protection related to his assertion that he is treated differently than inmates with similar convictions and sentences with respect to classification to maximum custody | Clarkson, Cool, Hendley, Liverani, Lona, Morrow |
|----|-------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|--------------------------------------------------|
| 17 | Eighth Amendment conditions of confinement related to the right to exercise | Clarkson, Cool, Hendley, Liverani, Lona, Morrow |
| 18 | Eighth Amendment claim regarding the risk of harm related to having to walk great distances in restraints | Baca, Clarkson, Cool, Cox, Hendley, Hensen, Kuoloia, Liverani, Lona, Morrow, Neven, Skolnik, Walker |
| 20 | First Amendment retaliation | Baca, Clarkson, Cool, Cox, Hendley, Hensen, Kuoloia, Liverani, Lona, Morrow, Neven, Skolnik, Walker |
| 24 | Fourteenth Amendment due process related to the alleged intentional, authorized deprivation of property | Baca, Clarkson, Cool, Cox, Hendley, Hensen, Kuoloia, Liverani, Lona, Morrow, Neven, Skolnik, Walker |

**B. Defendants' Motion**

First, Defendants have filed an unenumerated motion to dismiss based on Plaintiff's failure to exhaust his administrative remedies as to Counts 4, 7 (equal protection claim only), 9, 13, 14, 16, and 20. (Doc. # 109 at 8-11.)

Second, Defendants argue they are entitled to summary judgment on Counts 1 and 2. (Doc. # 109 at 11-13.)

## II. LEGAL STANDARD

**A. Unenumerated Motion to Dismiss for Failure to Exhaust Administrative Remedies**

The Prison Litigation Reform Act (PLRA) provides: "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). An inmate must exhaust his

4

administrative remedies irrespective of the forms of relief sought and offered through administrative avenues. *Booth v. Churner*, 532 U.S. 731, 741 (2001). The Supreme Court has clarified that exhaustion cannot be satisfied by filing an untimely or otherwise procedurally infirm grievance, but rather, the PLRA requires "proper exhaustion." *Woodford v. Ngo*, 548 U.S. 81, 89 (2006). "Proper exhaustion" refers to "using all steps the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)." *Id.* (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)) (emphasis original).

The failure to exhaust administrative remedies is treated as a matter in abatement and is properly raised in an unenumerated Rule 12(b) motion to dismiss. *Wyatt v. Terhune*, 315 F.3d 1108, 1119 (9th Cir.2003). Failure to exhaust administrative remedies is an affirmative defense, and defendants bear the burden of raising and proving failure to exhaust. *Id.* A court, in deciding a motion to dismiss based on exhaustion, may look beyond the pleadings and decide disputed issues of fact without converting the motion into one for summary judgment. *Id.* (citing *Ritza v. Int'l Longshoremen's & Warehousemen's Union*, 837 F.2d 365, 368 (9th Cir. 1988) (per curiam)). If a court concludes that the prisoner bringing a suit has failed to exhaust nonjudicial remedies, "the proper remedy is dismissal of the claim without prejudice." *Id.* at 1120.

For prisoners within the NDOC system, exhaustion of administrative remedies requires complying with the inmate grievance procedure set forth in NDOC Administrative Regulation (AR) 740. (Doc. # 109 at 6; AR 740 (Ex. A), Doc. 109-1 at 2-13.) Under the version of AR 740 effective during the time period in question, the procedure consisted of: (1) an informal level grievance; (2) a first level grievance; and (3) a second level grievance. (*Id.*)

**B. Motion for Summary Judgment**

"The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court." *Northwest Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994) (citation omitted). All reasonable inferences are drawn in favor of the non-moving party. *In re Slatkin*, 525 F.3d 805, 810 (9th Cir. 2008) (citing

1  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). Summary judgment is appropriate

2  if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that

3  there is no genuine issue as to any material fact and that the movant is entitled to judgment as

4  a matter of law." *Id.* (quoting Fed.R.Civ.P. 56(c)).[1] Where reasonable minds could differ on the

5  material facts at issue, however, summary judgment is not appropriate. *See Anderson*, 477 U.S.

6  at 250.

7      The moving party bears the burden of informing the court of the basis for its motion,

8  together with evidence demonstrating the absence of any genuine issue of material fact.

9  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Although the parties may submit evidence

10  in an inadmissible form, only evidence which might be admissible at trial may be considered

11  by a trial court in ruling on a motion for summary judgment.  Fed.R.Civ.P. 56(c).

12      In evaluating the appropriateness of summary judgment, three steps are necessary:

13   (1) determining whether a fact is material; (2) determining whether there is a genuine issue

14  for the trier of fact, as determined by the documents submitted to the court; and (3)

15  considering that evidence in light of the appropriate standard of proof. *See Anderson*, 477 U.S.

16  at 248-250. As to materiality, only disputes over facts that might affect the outcome of the suit

17  under the governing law will properly preclude the entry of summary judgment; factual

18  disputes which are irrelevant or unnecessary will not be considered. *Id.* at 248.

19      In determining summary judgment, a court applies a burden shifting analysis. "When

20  the party moving for summary judgment would bear the burden of proof at trial, 'it must come

21  forward with evidence which would entitle it to a directed verdict if the evidence went

22  uncontroverted at trial.'[ ] In such a case, the moving party has the initial burden of

23  establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R.*

24  *Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (internal

25

26  [1]Federal Rule of Civil Procedure 56 was amended in 2010 to state: "The court shall grant summary judgment if

27  the movant shows that there is no genuine *dispute* as to any material fact and the movant is entitled to judgment as a matter of law." (Emphasis added.) The analysis under the cases cited, however, remains the same.

28                                             6

citations omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex*, 477 U.S. at 323-25. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 160 (1970).

If the moving party satisfies its initial burden, the burden shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987)(quotation marks and citation omitted). The nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *Id*. Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See* Fed.R.Civ.P. 56(e); *Celotex*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249. While the evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in its favor," if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *Id*. at 249-50, 255 (citations omitted).

///

///

### III. DISCUSSION

**A. Exhaustion-Counts 4, 7 (equal protection only), 9, 13, 14, 16, and 20**

Defendants contend that Plaintiff failed to exhaust his administrative remedies with respect to the claims asserted in these counts. His grievance history at HDSP through April 2013, is set forth as Exhibit C to Defendants' motion. (*See* Doc. # 109 at 8:11-13, n. 2; Doc. # 109-3 at 2-136.) In addition, Defendants have included the affidavit of HDSP grievance coordinator Jennifer Nash as Exhibit B to their motion, who identifies the issues Defendants contend Plaintiff failed to grieve. (*See* Doc. # 109 at 8 n. 2; Nash Decl. (Ex. B) at Doc. # 109-2 at 2-5.)

Plaintiff, on the other hand, contends that he exhausted his administrative remedies as to all claims asserted in his complaint. (Antonetti Decl., Doc. # 124 at 3 ¶ 3.)

Preliminarily, the court points out that Plaintiff also argues that he did not have to exhaust his administrative remedies because he is challenging the grievance process. As the court advised Plaintiff in the screening order, inmates have no constitutional right to a grievance system and he has no constitutional claim stemming from these allegations. Moreover, he is still required to comply with the rules held out by NDOC for completing the grievance process.

#### 1. Count 4

##### a. Summary of Claim

In Count 4, Plaintiff has been allowed to proceed with an Eighth Amendment conditions of confinement claim related to the alleged denial of outdoor exercise against defendants Clarkson, Cool, Hendley, Liverani, Lona, and Morrow.

Specifically, Plaintiff alleges he has been housed in segregation at HDSP since 2008. (Doc. # 9 at 18.) He contends he should get a minimum of five hours per week of outdoor exercise; however, he claims he is actually given between two and three hours a week. (*Id.*) Additionally, at times, such as in January and February, he is given no opportunity to engage in outdoor exercise at all. (*Id.*) He contends this amounts to cruel and unusual punishment. (*Id.*

1    at 19.)

2    ### b. Summary of Argument

3    Defendants argue that while Plaintiff grieved the *conditions* of outdoor exercise areas,

4 he has not grieved the denial of outdoor exercise itself. (Doc. # 109 at 8; Nash Decl. (Ex. B) at

5 Doc. # 109-2 at 3 ¶ 7.)

6    According to Ms. Nash, she reviewed Plaintiff's grievances filed during his time at HDSP,

7 and found that he never specifically grieved denial of outdoor exercise. (*Id.*) The closest related

8 grievance referenced being skipped over for meal service, exercise or showers when he blocked

9 the window to his cell. (*Id.*)

10    Plaintiff maintains that he has exhausted every aspect of being denied outdoor exercise,

11 starting as far back as 2005. (Doc. # 115 at 4-5, citing Ex. A; Antonetti Decl., Doc. # 124 at 7 ¶

12 11.) He references grievance 200522054, where he claims he complained of not being given

13 yard time, and that HDSP failed to afford him one hour of exercise time per day. (Doc. # 115

14 at 5.) In addition, he states that he grieved this issue in grievance 20052613824, although he

15 acknowledges this grievance was rejected as being duplicative. (*Id.*)

16    In their reply, Defendants argue that no grievance filed by Plaintiff that remotely address

17 the issues raised in Count 4 served to exhaust Plaintiff's administrative remedies.(Doc. # 133

18 at 3-4.) First, with respect to grievance 2005267054, Defendants point out that Plaintiff never

19 filed a second level grievance so he did not complete the grievance process. (*Id.* at 3.)

20 Additionally, Defendants stress that even if this grievance were properly completed, this claim

21 would be barred by the two-year statute of limitations. (*Id.* at 3-4.)

22    With respect to grievance 20062915988, Defendants contend Plaintiff did not

23 specifically grieve a lack of outdoor exercise time, but complaint about an administrative

24 regulation conflicting with an operational procedure. (*Id.* at 4.)

25    Next, as to grievance 20062640688, Defendants take the position that this grievance

26 was rejected as a duplicate and that the claims associated with the grievance would be barred

27 by the two-year statute of limitations. (*Id.*)

28

In a footnote, Defendants address another grievance Plaintiff attached in support of his claim that he exhausted his administrative remedies as to Count 4—grievance 2006291465. (Doc. # 133 at 4 n. 1.) They acknowledge that the informal level grievance mentions exercise time, but the grievance in general complains about a lack of "basic human needs." (*Id*.) In addition, Defendants state that the exercise issue was not raised after the informal level, and the rest of the grievance levels focused on lights and skipped meals. (*Id*.)

### c. Analysis

Defendants provide the declaration of Ms. Nash, stating that Plaintiff failed to exhaust his administrative remedies as to his claim in Count 4 that he was denied adequate outdoor exercise. (Doc. # 109 at 8; Nash Decl. (Ex. B) at Doc. # 109-2 at 3 ¶ 7.)

Plaintiff submits several documents, which he contends served to exhaust his administrative remedies with respect to Count 4. (*See* Doc. # 115 at 4-5; Ex. A, Doc. # 115 at 17-29.)

The court will review each of the documents submitted by Plaintiff to determine whether any serves as evidence that he properly exhausted his administrative remedies as to Count 4.

### i. March 2, 2008 Inmate Request forms

First, Plaintiff has submitted two inmate request forms dated March 2, 2008. (Doc. # 115 at 17-18.) The request forms do reference the denial of outdoor exercise; however, Plaintiff is required to *properly* exhaust his administrative grievances, which requires that he comply with all steps held out by NDOC for him to do so. AR 740 requires the filing of three levels of *grievances* to properly exhaust administrative remedies. Filing an inmate request form, which is different than a grievance form, is therefore insufficient. The March 2, 2008 inmate request forms did not serve to exhaust Plaintiff's administrative remedies as to Count 4.

### ii. Grievance 20062915988

Second, Plaintiff has submitted grievance 20062915988. (Doc. # 115 at 19-21.)

In the informal level grievance, Plaintiff references an AR that inmates are to have a minimum of seven hours of outdoor recreation, while the operational procedures require a

minimum of five hours. (*Id*. at 19.) Plaintiff goes on to state that both the AR and operational procedures are in violation of a federal consent decree which requires a minimum of eight hours of outdoor exercise time. (*Id*.) The grievance response states: "3098-duplicative grievance."

Despite the response, Plaintiff filed a first level grievance stating: "You are required to give inmates 8 hrs 'minimum' outside exercise. You only give 2-3. Your AR. OP. says 7 & 5. This is deliberate indifference to consent decree..." (*Id*. at 20.) The response to the first level grievance states: "3098- improper grievance. Rejected informal level." (*Id*.)

Plaintiff then filed a second level grievance, stating: "Duplicate or not, you are in violation of your own laws, word and consent decree. You are obviously indifferent to the law and exercise requirements. See informal/first lvl." (*Id*. at 21.) The response to the second level grievance states: "3098-rejected informal and first level. Improper grievance." (*Id*.)

Defendants argue this grievance cannot serve to exhaust Plaintiff's administrative remedies because it was rejected as being duplicative. (Doc. # 133 at 4.) The Supreme Court has held "proper exhaustion" means using all steps the prison holds out and "doing so *properly* (so that the agency addresses the issue on the merits)." *Woodford*, 548 U.S. at 89 (citation and internal quotation marks omitted) (emphasis original)**.**

Plaintiff appears to acknowledge that grievance 20062915988 was duplicative of an earlier filed grievance. (Doc. # 115 at 21.) The question, therefore, is whether AR 740 disallowed duplicative grievances, making grievance 20062915988 improper. A review of AR 740 reveals that an inmate is prohibited from abusing the inmate grievance procedure when he files a grievance regarding a specific claim or incident that has previously been filed by the same inmate. (Doc. # 109-1 at 9, AR 740.09(2)(B).) In the event an inmate files a grievance that is considered to be an abuse of the prison grievance process, the assigned caseworker is instructed, among other things, to return a copy of the improper grievance to the inmate with a form 3098, noting the specific violation. (*Id*. at 10, AR 740.09(3)(A).)

Accordingly, it appears Plaintiff's grievance was in fact improper under AR 740.

Therefore, grievance 20062915988 cannot serve to exhaust Plaintiff's administrative remedies under Count 4.

### iii. Grievance 20062640688

Third, Plaintiff submits a NOTIS report summary for grievance 20062640688. (Doc. # 115 at 22.) There is no actually summary of the informal level grievance, but the summary of the response indicates that the informal level grievance was rejected as being duplicative of grievance 20062633250. (*Id*.)

Plaintiff apparently filed a first level grievance which was rejected, citing form 3098 (the form utilized for grievances determined to be an abuse of the grievance procedure, which was noted in the response to the informal level grievance) and stating that the grievance exceeded applicable time frames. (*Id*.)

Plaintiff proceed to file a second level grievance, claiming he had been denied yard time, and was told in response: "The Unit 3 recreation pens were closed for repair of the fence fabric and to have cement floors poured. The recreation pens were re-opened and recreation has been resumed. Grievance resolved." (*Id*.)

Defendants take the position that this grievance was rejected as a duplicate and that the claims associated with the grievance would be barred by the two-year statute of limitations. (*Id*.)

While this grievance was initially rejected as a duplicate, Defendants eventually responded to the second level grievance, in essence stating that the issue had been resolved on the merits.

This court has interpreted Justice Alito's majority opinion in *Woodford* as setting forth two tests for "proper exhaustion": (1) the "merits test," satisfied when a plaintiff's grievance is fully addressed on the merits by the administrative agency and appealed through all the agency's levels, and (2) the "compliance test," satisfied when a plaintiff complies with all critical procedural rules and deadlines. *Jones v. Stewart*, 457 F. Supp. 2d 1131, 1134 (D. Nev. 2006). "A finding that a plaintiff has met either test is sufficient for a finding of 'proper exhaustion.'

1  Defendants must show that Plaintiff failed to meet both the merits and compliance tests to

2  succeed in a motion to dismiss for failure to exhaust administrative remedies." *Id.*

3       Here, it appears that despite initially being rejected as duplicative of another grievance,

4  Plaintiff's grievance was eventually  addressed on the merits by NDOC and appealed through

5  each of the three levels mandated by AR 704. Therefore, Plaintiff complied with the "merits

6  test." As such, the court cannot conclude Count 4 should be dismissed on this basis.

7       The court will now address Defendants' argument that this claim, if supported by this

8  grievance, is barred by the applicable two-year statute of limitations.

9       Section 1983 does not contain its own statute of limitations; federal courts borrow the

10  statute of limitations for section 1983 claims applicable to personal injury claims in the forum

11  state. *See Wilson v. Garcia,* 471 U.S. 261, 279-80 (1985); *Johnson v. State of Cal.*, 207 F.3d

12  650, 653 (9th Cir. 2000) (citation omitted); *Fink v. Shedler*, 192 F.3d 911, 914 (9th Cir. 1999).

13  In Nevada, the statute of limitations for personal injury claims, and therefore § 1983 actions,

14  is two years. Nev.  Rev.  Stat. § 11.190(4)(e); *see also Perez v. Seevers*, 869 F.2d 425, 426 (9th

15  Cir. 1989).

16       "A statute of limitations begins to run on the date on which the plaintiff's claim

17  'accrues.'" *Pouncil v. Titon*, 704 F.3d 568, 573 (9th Cir. 2012) (citation omitted). "Federal law

18  determines when a cause of action for a Section 1983 claim accrues and, hence, when the

19  statute of limitations beings to run." *Id.* (citation omitted). "Under federal law, a claim accrues

20  when the plaintiff knows, or should know, of the injury which is the basis of the cause of

21  action." *Johnson*, 207 F.3d at 653 (citation omitted). "[T]he applicable statute of limitations

22  must be tolled while a prisoner completes the mandatory exhaustion process." *Brown v.*

23  *Valoff*, 422 F.3d 926, 942-43 (9th Cir.  2005) (citations omitted).

24       "A statute of limitation defense may be raised by a motion to dismiss if the running of

25  the limitation period is apparent on the face of the complaint." *Vaughan v.  Grijalva*, 927 F.2d

26  476, 479 (9th Cir.  1991); *see also Estate of Blue v.  County of Los Angeles*, 120 F.3d 982, 984

27  (9th Cir.  1997).

28                                   13

Here, the two-year statute of limitations would be tolled until Plaintiff completed the grievance process for grievance 20062640688. The documentation submitted by Plaintiff indicates that the second level grievance response was returned to Plaintiff either on March 7, 2008 or March 28, 2008. (Doc. # 115 at 22.) Plaintiff submitted this action for filing on March 22, 2010. (Doc. # 1.) Neither Plaintiff nor Defendants address the existence of two second level grievance entries in the NOTIS report or the discrepancy this creates for purposes of determining whether the claim is barred by the statute of limitations. Accordingly, the court cannot resolve this issue on the record before it.

Additionally, the court points out that neither Plaintiff nor Defendants address what would be barred by the statute of limitations. Count 4 alleges a denial of outdoor exercise time from 2008 going forward. The court cannot make a conclusive determination on the record before it, but it appears that if the grievance process was completed on March 7, 2008, Plaintiff would be permitted to proceed with his claim that he continued to be denied adequate outdoor exercise within the statute of limitations period.

In sum, the court concludes that Defendants should not be entitled to a dismissal of Count 4 on the basis that he did not exhaust his administrative remedies under grievance 20062640688.

### iv. Illegible grievance number (Doc. # 115 at 23) & Grievance 2005267054 (Doc. # 115 at 24)

Fourth, Plaintiff has submitted an informal level grievance with an illegible grievance number. (Doc. # 115 at 23.) The informal level grievance references the denial of one hour of exercise per day. (*Id*.) The response states that pursuant to AR 507, administrative segregation inmates will receive seven hours per week of outdoor exercise, absent a staff shortage, and that exceptions are noted in the unit log. (*Id*.)

Following that document, Plaintiff has submitted a NOTIS report summary for grievance 2005267054. (Doc. # 115 at 24.) It is not entirely clear whether this is the same grievance set forth immediately proceeding this document, but the summary of the informal

14

level grievance and response  is consistent with that conclusion. In addition to the summary of the informal level grievance (noted above), there is also a summary of the first level grievance, which states: "Inmate wishes to proceed to level one." (*Id*.) The response states: "You have not provided any evidence, examples, etc. except in the cases of staff shortages or Institutional Emergencies. Lockdown inmates receive 7 hours a week of exercise." (*Id*.)

There is no indication that a second level grievance was ever filed; therefore, grievance 2005267054 cannot be said to have served to exhaust Plaintiff's administrative remedies as to Count 4.

### v. Grievances 20062706951, 20062706907, 20062697929, 20062664989

Fifth, Plaintiff has submitted a NOTIS summary page which references the four grievances noted above. (Doc. # 115 at 25.) One of the grievances—20062706907—references the denial of exercise; however, there is no evidence that this grievance proceeded past the informal level. (*Id*.) Therefore, grievance 20062706907 cannot have served to exhaust Plaintiff's administrative remedies with respect to Count 4.

### vi. Grievance 20062921465

Finally, Plaintiff has submitted grievance 20062921465. (Doc. # 114 at 26-29.) Plaintiff's informal level grievance mentions a barrage of issues that he generally characterizes as constituting a denial of "basic human needs." (Doc. # 114 at 26-27.) The two-page informal level grievance does contain one reference to "exercise" (*id*. at 26) but does not state anywhere that he is receiving an inadequate amount of exercise or otherwise describe this claim. The first level grievance only makes reference to lights and covering windows. (*Id*. at 28.) The second level grievance also appears to refer only to lights and windows. (*Id*. at 29.)

The main purpose of an inmate grievance "is to alert the prison to a problem and facilitate its resolution, not to lay the groundwork for litigation." *Griffin v.  Arpaio*, 557 F.3d 1117, 1120 (9th Cir.  2009).   "A grievance suffices to exhaust a claim if it puts the prison on adequate notice of the problem for which the prisoner seeks redress." *Sapp v.  Kimbrell*, 623

1   F.3d 813, 922 (9th Cir.  2010).

2       The court agrees with Defendants that grievance 20062921465 does not put the prison

3   on notice of the problem so that the prison could facilitate a resolution. Accordingly, grievance

4   20062921465 does not serve to exhaust Plaintiff's administrative remedies as to Count 4.

5                                   **d. Conclusion**

6       In sum, Defendants' motion to dismiss Count 4 on the basis that Plaintiff has failed to

7   exhaust his administrative remedies should be denied because the court cannot make a

8   determination on the record before it whether this is the case as to grievance  20062640688**.**

9   Nor can the court determine on the record before it whether Plaintiff's claim in Count 4, or any

10  portion of it, is barred by the applicable statute of limitations.

11      **2. Count 7 (equal protection claim only)**

12                              **a. Summary of Claim**

13      In Count 7, Plaintiff asserts an equal protection claim based on his allegation that he has

14  been treated differently than other prisoners based on his crime, race, religion, and political

15  beliefs, against defendants Clarkson, Cool, Hendley, LIverani, Lona, and Morrow. Count 7 also

16  contains a due process claim which is not the subject of Defendants' motion.

17                          **b. Summary of Argument**

18      Defendants contend Plaintiff failed to exhaust his administrative remedies with respect

19  to the equal protection claim in Count 7. (Doc. # 109 at 8-9; Nash Decl. (Ex. B) at Doc. # 109-2

20  at 3-4 ¶ 9.) They acknowledge that he did grieve that administratively segregated inmates are

21  housed in the same units as "psych" inmates and inmates in disciplinary segregation, but did

22  not specifically allege that he felt the classification committee or others confined him to

23  administrative segregation because of his crime, race, religion, Security Threat Group (STG)

24  status or political beliefs. (*Id*. at 9.)

25      Plaintiff disputes this, arguing that he grieved this issue in grievances 20052613473 and

26  20062917017. (Doc. # 115 at 6; Ex. B, Doc. # 115 at 30-42.)

27      In their reply, Defendants claim grievance 20062917017 was submitted to prison

28                                        16

officials on March 9, 2011, nearly a year after Plaintiff filed his complaint. (Doc. # 133 at 4.) In addition, they contend the grievance generally complains about classification but does not set forth an argument that could be construed as an equal protection claim. (*Id*.)

Next, Defendants respond to Plaintiff's reference to grievance 20052613473. (Doc. # 133 at 5.) They point out that this grievance was received by prison officials at the informal level on November 10, 2005, and as such the statute of limitations expired on November 10, 2007, and thus, this claim would be time-barred. (*Id*.)

### c. Analysis

As he did with respect to Count 4, Plaintiff has submitted various documents which he contends served to exhaust his administrative remedies as to the equal protection claim in Count 7. (Pl.'s Ex. B, Doc. # 115 at 30-42.) The court will now address those documents to determine whether Plaintiff has exhausted his administrative remedies.

### i. Grievance 20062917017

First, Plaintiff submits various documents concerning grievance 20062917017. (Doc. # 115 at 30-38.) It appears Plaintiff filed an informal level grievance on March 9, 2011, stating that he has been labeled as STG and subject to harassment. (*Id*. at 34.) He goes on to state that by doing so, NDOC is punishing him due to his "pride in his ethnicity, political and religious beliefs." (*Id*. at 35.) He asks NDOC to remove the stigma and stop harassing him. (*Id*.) The informal level response states:

> You were validated as a White Supremacist 6/27/07 and appealed the decision on 10/16/08 and it was denied. Validation remains. You have failed to provide any proof or information to substantiate your claim that you are subject to harassment or a 'stigma' from the administration of staff. Your request to have your validation removed has previously been appealed and denied. Grievance denied.

(Doc. # 115 at 31.) According to the NOTIS report, the informal level response date was March 17, 2011. (*Id*.)

Plaintiff's first level grievance is dated March 21, 2011**.** (*Id*. at 36.) Plaintiff states that NDOC has offered no proof that he is in a gang, security threat group or in any other manner poses a threat to the institution. (*Id*. at 37.) He explains the "stigma" he previously referenced

17

1   and states that his points are affected by the STG classification, where he can go, and it subjects

2   him to cell searches. (*Id.*)

3       The response denying the first level grievance again indicates Plaintiff has not provided

4   proof to substantiate the claim he has been subjected to harassment or "stigma" from

5   administration or staff. (*Id.* at 115.) The transaction date for the response is listed in NOTIS as

6   March 24, 2011. (*Id.*)

7       Plaintiff then filed a second level grievance dated April 5, 2011. (Doc. # 115 at 38.) He

8   reiterates that the validation is unsupported, and that he is subject to "stigma" in the form of

9   lock down, points, cell searches, as well as general embarrassment. (*Id.*)

10       The second level response, dated April 12, 2011, generally repeats the determination

11   made at both the informal and first levels and denies the grievance. (Doc. # 115 at 33.)

12       Plaintiff submitted his complaint for filing on March 22, 2010. (Doc. # 1.) Even if the

13   court construed this grievance as raising an equal protection issue, Defendants are correct that

14   the grievance process was not initiated, let alone completed, until over a year after Plaintiff filed

15   his complaint in this matter. Under the PLRA, exhaustion must be completed *prior* to filing of

16   a civil action. 42 U.S.C. § 1997e(a); *see also Cano v. Taylor*, ---F.3d--- (9th Cir. Jan. 14, 2014),

17   2014 WL 114684, at * 4 (9th Cir. Jan 14, 2014) (citation omitted). "Congress purposefully made

18   exhaustion a precondition to suit, rather than to judgment, and...this was done with the goal

19   of affording corrections officials the opportunity to address complaints internally." *Id.* (citation

20   omitted). Therefore, grievance 20062917017 did not serve to exhaust Plaintiff's administrative

21   remedies as to the equal protection claim in Count 7.

22                                **ii. Grievance 20052613473**

23       Next, Plaintiff relies on grievance 20052613473 as serving to exhaust his administrative

24   remedies as to the equal protection claim in Count 7.

25       Plaintiff filed an informal level grievance dated November 2, 2005. (doc. # 115 at 40.)

26   In that grievance, he states that he has been told he is "HRP" (high risk potential), without

27   being seen by a classification committee. (*Id.*) He also references being labeled STG. (*Id.*) He

28

asserts this disregards his due process rights. (*Id*.)

The response to the informal level grievance states that Plaintiff has been identified as a white supremacist by law enforcement agencies as well as the inspector general's staff. (*Id*.) He was classified to maximum custody at initial classification at ESP due to this sentence structure, and was returned to HDSP for court. (*Id*.) He was advised that as a maximum custody inmate he can only be housed in administrative segregation. (*Id*.)

Plaintiff then filed a first level grievance. (Doc. # 115 at 41.) Again, he complains about a violation of his due process rights, although he does includes a passing reference to freedom of religion. (*Id*.)

Plaintiff proceeded with a second level grievance where he professed that he was not in a gang. (Doc. # 115 at 42.) In this grievance he does state: "There [are] many other inmates with the same crimes as myself. I have never had any validation hearing. Everyone has due process rights." (*Id*.) The second level response advises Plaintiff to contact his caseworker to arrange a due process hearing if he disagrees with the STG validation. (*Id*. at 39.)

While this grievance may serve to exhaust administrative remedies for a due process claim, it does not include any facts that would put prison officials on notice of an equal protection claim of the type Plaintiff has alleged in Count 7. While Plaintiff makes fleeting references to freedom of religion and other inmates with the same crimes, the focus of this grievance is clearly on his due process rights prior to being classified as HRP and STG. He specifically references not being able to see the classification committee and being denied a hearing. The focus is not on being treated differently from other inmates due to his crime, political beliefs, race or religion.

### d. Conclusion

The equal protection claim in Count 7 should be dismissed without prejudice as Plaintiff has failed to properly exhaust his administrative remedies.

///

///

19

1          **3. Count 9**

2                    **a. Summary of Claim**

3          In Count 9, Plaintiff has been allowed to proceed with a Fourteenth Amendment due

4    process claim related to the alleged intentional, authorized deprivation of property against

5    defendants Baca, Clarkson, Cool, Cox, Hendley, Hensen, Kuoloia, Liverani, Lona, Morrow,

6    Neven, Skolnik, and Walker.

7          In Count 9, Plaintiff alleges that he was the subject of a "shake down" of his cell and as

8    a result various items were designated as contraband and taken from his cell. (Doc. # 9 at 28.)

9    Plaintiff believed the items were authorized as they had been purchased through the prison

10   and/or given to him from agents or employees of the prison. (*Id.*) He contends he was not

11   notified of any rule changes that would have put him on notice that the items were not

12   authorized. (*Id.*) As a result, he avers that he was deprived of his property, was not given notice

13   that it was unauthorized**,** and was subject to disciplinary sanctions with no pre-deprivation

14   remedy. (*Id.*)

15                   **b. Summary of Argument**

16         Defendants point out that Plaintiff's allegations are vague in that they do not specify

17   what items of property were lost in the alleged "shake down." (Doc. # 109 at 9.) Thus, to

18   determine whether Plaintiff exhausted his administrative remedies on this claim, Defendants

19   cataloged each instance in which Plaintiff grieved the loss of any property. (*Id.*; Nash Decl. (Ex.

20   B) at Doc. # 109-2 at 4-5 ¶ 11.) In all but one instance, Plaintiff's grievances failed to include

21   a property loss claim form. (*Id.*) With respect to the one instance where Plaintiff did include

22   the proper forms, he was reimbursed for the property at issue (headphones) and signed a

23   settlement agreement memorializing this. (*Id.*)

24         Defendants maintain that AR 740 requires the submission of a property loss claim form

25   when an inmate is claiming the loss of property. (*Id.*) In each instance where Plaintiff did not

26   supply the form, he was notified and given an opportunity to remedy the deficiency by

27   submitting the form, but failed to do so.

28

Plaintiff argues that he filed a grievance containing a "notice of charges" which included a list of the property taken. In addition, Plaintiff argues that this complaint is not about the remedy for the taken property, but the denial of due process surrounding the taking of property. (Doc. # 115 at 3.)

Plaintiff then identifies the following grievances as serving to exhaust his administrative remedies with respect to Count 9: 20062841808, 20062834489, 20062848748, and 20062844468. (Doc. # 115 at 6.) He also disputes that Defendants ever responded to the grievances by telling him he needed to submit a property claim form. (*Id.*)

In their reply, Defendants reference what they have attached as Exhibit B, a NOTIS printout of grievance 20062834489, where Plaintiff states he was deprived of property after a cell "shake down." (Doc. # 133 at 5.) At the informal level, Plaintiff was advised that he failed to submit the proper documentation, but was given an opportunity to resubmit it, although he failed to do so. (*Id.*)

Next, Defendants contend Plaintiff failed to attach the proper documentation to grievance 20062841808. (Doc. # 133 at 5.) They reference Exhibit B which is attached to their reply brief, and is a NOTIS printout of this grievance.

Finally, Defendants contend grievance 20062848748 (attached as Exhibit C to their reply) was returned at the informal level as being duplicative of grievance 20062844468 (attached as Exhibit D to their reply). (Doc. # 133 at 5.)

### c. Analysis

#### i. Grievance 20062834489 & Notice of Charges Documentation

Plaintiff filed an informal level grievance dated December 12, 2008, complaining that an arbitrary "shake down" of his cell occurred and several items of property, including his magazines, nail clippers and ashtrays were taken by correctional officers. (Doc. # 115 at 64.) In addition, he claimed pillows were improperly taken, being deemed as "excess" property. (*Id.*) He stated that there are no posted rules regarding how many pillows an inmate can have. (*Id.*) As a remedy he asks to be compensated for his losses, and states that he was not given any

21

forms or other paperwork. (*Id*.) In the first and second level grievances, he again states that he was not given documentation or paperwork related to the property that was taken. (*Id*. at 65-66.)

Plaintiff did not submit any grievance responses with this documentation. Plaintiff did submit a notice of charges that was issued in connection with disciplinary action and lists items that were deemed contraband after a November 26, 2008 "shake down" of Plaintiff's cell. (Doc. # 115 at 67-68.)

Defendants did submit the NOTIS summaries of the responses to Plaintiff's grievance. (Doc. # 133-1 at 2-8 (Ex. A).) In response to the informal level grievance, Plaintiff was advised he did not submit the proper documentation, and that the proof of purchase must be attached for the grievance to be researched. (*Id*. at 8.) He was informed he could resubmit the grievance with the proper documentation. (*Id*.)

In response to the first level grievance, Plaintiff was told he cannot file a first level grievance after an informal level grievance is returned as unaccepted. (Doc. # 133-1 at 5.) He was instructed to re-file the grievance at the informal level. (*Id*.) At the second level, Plaintiff was told that his failure to resubmit the grievance in the proper form constitutes abandonment of the grievance. (Doc. # 133-1 at 3.) In addition, it states that Plaintiff did not provide the necessary documents to support his claim. (*Id*.)

It is clear that this grievance is related to the actual taking of the property as Plaintiff specifically notes in the informal level grievance that his property was taken after a "shake down" of his cell and some of it was deemed "excess" property when there are no rules that define excess property. This is also supported by the fact that the remedy sought was compensation for his losses. Plaintiff did not grieve the denial of due process in connection with the taking of his property in this grievance.

Accordingly, the court finds that Plaintiff did not exhaust his administrative remedies as to Count 9 through grievance 20062834489.

///

## ii. Grievance 20062841808

In his informal level grievance, Plaintiff complained that there are no rules or handbooks regarding the property that was taken from him. (Doc. # 115 at 69.) He also referenced the lack of pre- or post-deprivation property dispositions. (*Id.*)

Again, Plaintiff did not provide the grievances responses, but they were submitted in support of Defendants' reply. (*See* Doc. # 133-2 at 2-7 (Ex. B).)

In response to the informal level grievance, Plaintiff was told that he had failed to submit the proper documentation, and was advised to resubmit on a new grievance form attaching the disciplinary hearing forms. (*Id.* at 6.)

In the first level grievance, he states that he did not need to submit documentation as this grievance is about the failure to post rules and follow procedures when taking property. (Doc. # 15 at 70.)

In response, Plaintiff was told that he could not proceed to the first level when the informal level grievance was not accepted. (Doc. # 133-2 at 4.)

In his second level grievance, he states that he was not given documentation or paperwork, but then demand that he provide it. (*Id.* at 71.)

Plaintiff was advised he could not proceed to the second level when the informal level grievance was not accepted. (Doc. # 133-2 at 2.)

AR 740 clearly recognizes that there is a difference between a simple property claim and a civil rights claim. It states that "[i]nmates may use the Inmate Grievance Procedure to resolve addressable inmate claims including, but not limited to, *personal property, property damage*, disciplinary appears, personal injuries, and any other tort claim or *civil rights* claim relating to conditions of institutional life." (Doc. # 109-1 at 3, AR 740.03(1) (emphasis added).) In addition, the portion of AR 740 discussing potential remedies to resolve grievances includes, among other things, "appropriate measures to address the violation of an inmate's constitution, *civil* or statutory *rights*" as well as "appropriate monetary reimbursement *for property loss, damage*, personal injury, *tort*, or *civil rights* claims arising out of an act or omission of the

1   Department of Corrections..." (Doc. # 109-1 at 8-9, AR 740.08(2)(B), (F).)

2          In this grievance, as opposed to the previous one, it is clear that Plaintiff was

3   complaining about the lack of due process associated with the taking of property. Yet, his

4   grievance was not accepted because he failed to submit the proper documentation, including

5   disciplinary hearing forms. Defendants maintain that the failure to submit the property claim

6   form rendered the grievance infirm and it cannot be used as a basis to establish exhaustion as

7   to Count 9.

8          A review of the version of AR 740 submitted by Defendants reveals that there is only one

9   mention of any type of property claim form. This provision of AR 740 states:

10         If the inmate's remedy to their grievance includes monetary restitution or
           damages, then the inmate will get the following forms from unit staff, unit
11         caseworker, or law libraries: A. Form DOC-3026, Inmate Property Claim, which
           shall be completed and submitted in addition to the grievance for all property
12         loss or damage claims. B. Form DOC-3095, Administrative Claim Form, which
           shall be completed and submitted in addition to the grievance for all personal
13         injury, tort, or civil rights claims.
           (Doc. # 109-1 at 6.)
14
15         This provision does not state that a property claim form must be submitted in every

16   instance where a claim relates to property. Instead, the form apparently need only be submitted

17   if the inmate requests a remedy that includes monetary restitution or damages. Here, the only

18   remedy referenced in Plaintiff's informal level grievance is that his write-up be dropped. (Doc.

19   # 115 at 69.) This is not a request for monetary restitution or damages. As the court has stated

20   throughout this report and recommendation, an inmate is only required to comply with those

21   requirements which are held out to him by the institution. Plaintiff appears to have done so

22   here. Accordingly, this grievance was incorrectly characterized as lacking the appropriate

23   documentation.

24         The court finds that Plaintiff properly grieved the issue of being denied due process in

25   connection with grievance 20062841808 as he proceeded through all levels.

     ///
26
     ///
27

28                                                  24

### iii. Grievances 20062848748 & 20062844468

### A. Grievance 20062848748

In his informal level grievance of 20062848748, Plaintiff complains about the restitution process, asserting that NDOC "rob[s] inmates of money arbitrarily and with no real process or judicial review." (Doc. # 115 at 72.)

In response, Plaintiff was told that the grievance was not accepted as it was a duplicate of grievance 20062844468. (Doc. # 133-3 at 7.)

In the first level grievance, Plaintiff retorts that one grievance is related to charging for a pair of State sweat pants, and this one is about "the process all together." (Doc. # 115 at 73.)

The first level grievance was likewise rejected as being duplicative of grievance 20062844468. (Doc. # 133-3 at 4.)

In the second level grievance, Plaintiff once again states that the issue in the other grievance was charging him for sweat pants, and the issue in this grievance is the arbitrary restitution system. (Doc. # 115 at 74.)

The second level grievance was also not accepted as duplicative of grievance 20062844468. (Doc. # 133-3 at 2.)

### B. Grievance 2006284468

Defendants also provide the NOTIS entries for grievance 20062844468, which is the grievance the prison used as the basis for rejecting grievance 20062848748. (Doc. # 133-4 (Ex. D).) Plaintiff has provided the actual grievance documentation (as opposed to the NOTIS summary), but not the responses. (Doc. # 115 at 75-77.)

The summary of the informal level grievance contained in NOTIS states the following: "Inmate claims, You rob inmates of money arbitrarily with no process or judicial review, as well as freeze accounts." (Doc. # 133-4 at 7.) A review of the actual informal level grievance for grievance 20062844468 reveals that Plaintiff complained of being charged restitution for State sweat pants, when there is no such thing. (Doc. # 115 at 75.)

The summary of the informal level response indicates Plaintiff was told that the informal

1   level grievance was not accepted because he failed to attach a copy of property inventory and

2   notice of charges. (Doc. # 133-4 at 6.) He asks for his account to be unfrozen and for the return

3   of any money taken. (*Id.*)

4          The NOTIS summary of Plaintiff's first level grievance states: "Inmate disagree,

5   inventory and NOC have nothing to do with you charging me restitution for "state sweat pants"

6   which do not exist. You are trying to charge me for my personal property." (Doc. # 133-4 at 5.)

7   The actual grievance submitted by Plaintiff is consistent with this summary. (Doc. # 115 at 76.)

8          In response, Plaintiff was told that he was not permitted to file a first level grievance

9   when the informal level was not accepted. (Doc. # 133-4 at 5.) He was instructed to re-file the

10  grievance at the informal level. (*Id.*)

11         The summary of Plaintiff's second level grievance in NOTIS states; "Inmate claims there

12  are no state sweat pants." (Doc. # 133-4 at 3.) The actual second level grievance submitted by

13  Plaintiff reveals that Plaintiff also stated: "You don't know what you're doing. You make up

14  reasons to take things from people and there is no real review of the restitution system! It's a

15  joke. You just do whatever you want." (Doc. # 115 at 77.)

16         The response indicates that his failure to resubmit the informal level grievance within

17  the time frames results in the grievance being considered abandoned. (Doc. # 133-4 at 2.)

18         Here, Plaintiff was correct that the informal level grievance in grievance 20062848748

19  raised an issue with the "process" (Doc. # 115 at 72) while the informal level grievance in

20  200628444468 raised the issue of being charged for sweat pants (Doc. # 115 at 75).

21         The first level grievance in 200628444468 is similarly focused on being charged for

22  sweat pants while the first level grievance in 20062848748 points out the distinction between

23  the two grievances (Doc. # 115 at 73). The prison officials responding to the grievance

24  apparently did not compare the two grievances, as the denial of the grievance in 20062848748

25  was upheld at the first level (Doc. # 133-3 at 4).

26         Plaintiff pointed out the distinction between the grievances again in his second level

27  grievance in 20062848748 (Doc. # 115 at 74), but the decision not to accept the grievance as

28                                                      26

1  duplicative of grievance 20062844468 was upheld at the second level. (Doc. # 133-3 at 2.)

2      While AR considers filing grievances on the same issue to be an abuse of the prison

3  grievance procedure (*see* Doc. # 109-1 at 9, AR 740.09(2)(B)), a review of grievances

4  20062848748 and 20062844468 reveals that they present distinct issues. This was also

5  specifically pointed out by Plaintiff in his first and second level grievances in 20062848748.

6  The court finds grievance 20062848748 was incorrectly rejected, and that Plaintiff did in fact

7  complete the grievance process by going through all levels held out to him with respect to his

8  due process claim.

9          **d. Conclusion**

10     The court finds Plaintiff has exhausted his administrative remedies with respect to

11  Count 9; therefore, Defendants motion to dismiss Count 9 should be denied.

12      **4. Count 13**

13          **a. Summary of Claims**

14     In Count 13, Plaintiff has been allowed to proceed with a Fourth Amendment claim

15  based on an alleged unreasonable search and an Eighth Amendment claim related to a search

16  that was allegedly intended to harass against defendants Clarkson, Cool, Hendley, Liverani,

17  Lona, and Morrow.

18     Plaintiff alleges that when he is moved from his cell to any other place, he must stand

19  in a wide open public shower, in view of female employees, and others, and is subjected to a

20  strip search. (Doc. # 9 at 38.) He contends this is an unnecessary practice, done with the intent

21  to harass. (*Id.* at 39.)

22          **b. Summary of Argument**

23     Defendants argue that Plaintiff has never grieved the issue of the cleanliness of the area

24  in which he is searched. (Doc. # 109 at 9; Nash Decl. (Ex. B) at Doc. # 109-2 at 3¶ 8.) Ms. Nash

25  states:

26          In my review of Mr. Antonetti's grievances filed during his time within HDSP,
            prior to filing this lawsuit on March 22, 2010 he never specifically grieved being
27          forced to be "strip searched" in filthy showers while "standing naked in scum" as

28                                          27

he alleges in Count XIII of his Complaint. In grievance # 20062834679, Mr. Antonetti grieved that the purpose of the searches was to intimidate him out of using the showers or exercise areas. However, he never grieved the cleanliness of the areas in which he is strip-searched. Additionally, in grievance # 200629618035 filed June 4th, 2013, Plaintiff did grieve the cleanliness of the showers in which [he] was searched. That grievance is currently pending at the informal level and thus has not been fully exhausted.

(Nash Decl. (Ex. B), Doc. # 109-2 at 3 ¶ 8.)

Plaintiff maintains that he did grieve the issue of cleanliness of the area where the strip searches were performed as well as the asserted impropriety of the strip searches themselves. (Doc. # 115 at 7; Antonetti Decl., Doc. # 124 at 7 ¶ 10.)

In their reply, Defendants contend that none of the grievances referenced by Plaintiff discuss the cleanliness of the showers. (Doc. # 133 at 5-6.)

### c. Analysis

The court reiterates that Plaintiff was allowed to proceed with two claims in Count 13: (1) a Fourth Amendment claim related to the alleged unreasonable strip search; and (2) an Eighth Amendment claim related to the allegation that the strip search was conducted with an intent to harass.

First, Defendants do *not* argue that Plaintiff failed to grieve the allegedly unreasonable strip search, only that he did not grieve the issue about the uncleanly floors. Therefore, to the extent their motion can be construed as seeking dismissal of the Fourth Amendment claim on this basis, their motion should be denied.

Second, when it screened this complaint the court did not state that the basis of the Eighth Amendment claim was the allegedly filthy floors on which the strip search was conducted. The main purpose of an inmate grievance "is to alert the prison to a problem and facilitate its resolution, not to lay the groundwork for litigation." *Griffin v. Arpaio*, 557 F.3d 1117, 1120 (9th Cir. 2009). . "A grievance suffices to exhaust a claim if it puts the prison on adequate notice of the problem for which the prisoner seeks redress." *Sapp v. Kimbrell*, 623 F.3d 813, 922 (9th Cir. 2010). "To provide adequate notice, the prisoner need only provide the level of detail required by the prison's regulations." *Id.*; *see also Jones*, 549 U.S. at 218

28

("Compliance with prison grievance procedures...is all that is required by the PLRA to 'properly exhaust.' The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion.").

Finally, Defendants concede that Plaintiff grieved that the purpose of the strip search was to intimidate him. The court finds this is sufficient to put them on notice of his claim.

In sum, Defendants' motion to dismiss Count 13 on the basis that Plaintiff failed to exhaust his administrative remedies should be denied.

### 5. Count 14

#### a. Summary of Claim

In Count 14, Plaintiff has been allowed to proceed with a Fourteenth Amendment due process claim related to the alleged intentional, authorized deprivation of property when Plaintiff leaves his cell against defendants Baca, Clarkson, Cool, Cox, Hendley, Hensen, Kuoloia, Liverani, Lona, Morrow, Neven, Skolnik, and Walker.

Plaintiff alleges that he is housed in segregation, and it is the practice of officers to search cells at any time an inmate leaves their cell. (Doc. # 9 at 40.) As a result, he claims that his cell has been trashed and left in shambles every day. (*Id.*) He goes on to assert that officers enter the cell with a trash bag and throw away personal belongings without notice, with no pre- or post-deprivation remedy. (*Id.*)

#### b. Summary of Argument

Here, Defendants reference the argument they advanced with respect to Count 9, that Plaintiff did not properly grieve the loss by failing to include a property loss claim with his grievances.

Plaintiff likewise references the position he took with respect to Count 9, except that he identifies one additional grievance that he contends exhausts his administrative remedies.

#### c. Analysis

Plaintiff identifies one additional grievance that was not identified in connection with

Count 9—grievance 20062834736. (Doc. # 115 at 8; Ex. E, Doc. # 115 at 88.) He does not produce the responses to the grievance.

At the informal level, Plaintiff complains of arbitrary "shake downs" that occur on a daily basis. (*Id*.) In the first level grievance, he contends that NDOC regulations are wrong, and that there is no reason to search a person's cell every day. (*Id*. at 89.) Finally, in the second level grievances, Plaintiff asserts that the cell searches are not random and do not further any safety or security interest. (*Id*. at 90.)

Grievance 20062834736 did not put Defendants on notice regarding a due process claim related to the taking of his property in connection with the search of his cell. Rather, this grievance is focused on the arbitrary nature of the searches themselves.

However, because the court found with respect to Count 9 that other grievances served to exhaust Plaintiff's administrative remedies on a very similar claim, the court recommends that Defendants' motion to dismiss Count 14 should be denied on the same basis.

**6. Count 16**

**a. Summary of Claim**

In Count 16, Plaintiff has been allowed to proceed with an equal protection claim related to his assertion that he is treated differently than inmates with similar convictions and sentences with respect to classification to maximum custody against defendants Clarkson, Cool, Hendley, Liverani, Lona, and Morrow.

Plaintiff alleges that he was arbitrarily classified to "Max Custody" due to his crime and sentence structure, and because he has not adjusted himself or properly conducted himself in lower custody levels. (Doc. # 9 at 43.) He contends this has resulted in him being subjected to more restrictive conditions based only on the assumption that he would present a problem in lower custody levels because of his race, political and religious beliefs and type of crime. (*Id*.)

**b. Summary of Argument**

As they argued with respect to Count Seven's equal protection claim, Defendants contend Plaintiff has never grieved that his classification is based upon racial, religious,

1    political or criminal prejudice. (Doc. # 109 at 10; Nash Decl. (Ex. B), Doc. # 109-2 at 3-4 ¶ 9.)

2    Plaintiff disputes that he did not exhaust his administrative remedies with respect to

3    Count 16. (Doc. # 115 at 8, citing Exhibit B2.) He references grievance 20052613473, the

4    grievances listed with respect to his argument in Count 7, and grievances 20062921525,

5    20062859388, 20062870192, 20062919976, 20062647727, and 20062915995. (*Id.*)

6    In their reply, Defendants claim Count 16 must be dismissed for the same reasons they

7    asserted in their reply with respect to Count 2. (Doc. # 133 at 6.)

### c. Analysis

9    Insofar as Plaintiff maintains that he exhausted his administrative remedies through the

10   grievances referenced in Count 2, the court incorporates its analysis of those grievances with

11   respect to Count 16. A comparison of Plaintiff's argument in Count 2 and Count 16 reveals that

12   the only overlapping grievance is 20052613473. Therefore, the court will now address the

13   remainder of the grievances identified by Plaintiff as serving to exhaust his administrative

14   remedies for Count 16: 20062647727, 20062859388, 20062921525, 20062915995,

15   20062870192, and 20062919976.

### i. Grievance 20062647727

17   Plaintiff only submits the NOTIS report summary of grievance 20062647727**.** (Doc. #

18   115 at 43.) The document does not contain a summary of the grievances, but only the responses.

19   (*Id.*) At the informal level, the summary of the response indicates Plaintiff was advised he is

20   a maximum security inmate, at HDSP for court purposes only, and is an escape risk. (*Id.*) He

21   was also told there is no due process for an HRP designation. (*Id.*) The informal response was

22   upheld on the same basis. (*Id.)* The summary of the second level response indicates that

23   Plaintiff had stated due process is required for a situation that punishes an inmate. (*Id.*)

24   There is nothing within this grievance summary to support Plaintiff's contention that

25   he was grieving the fact that he was subjected to more restrictive conditions because of his race,

26   political and religious beliefs or type of crime, which is the basis of his claim in Count 16.

27   Therefore, grievance 20062647727 did not serve to exhaust Plaintiff's administrative

28                                                      31

remedies for Count 16.

### ii. Grievance 20062859388

In his informal level grievance, Plaintiff complained of being scheduled to see the classification committee for five weeks but not being seen. (Doc. # 115 at 44.) The response states: "You were seen by full classification on 2/17/09" and that the "issue[] has been addressed." (*Id.*)

At the first level, Plaintiff acknowledges he was eventually seen by the classification committee, but he takes issue with the amount of time it took to be seen. (*Id.* at 45.) He complains about a due process violation. (*Id.*) Plaintiff does not provide the response to this grievance.

In the second level grievance, Plaintiff once again takes issue with not having seen the classification committee frequently enough. (*Id.* at 46.) This grievance similarly contains no facts that would put prison officials on notice of an equal protection claim based on the allegation that Plaintiff was subjected to more restrictive conditions because of his race, political and religious beliefs or type of crime. Therefore, it cannot serve to exhaust Plaintiff's administrative remedies for Count 16.

### iii. Grievance 20062921525

At the informal level, Plaintiff's grievance centers on the allegation that NDOC directors write temporary regulations that are not actually temporary, and are not followed. (Doc. # 115 at 48-49.) He reiterates this complaint in the first and second levels. (*Id.* at 51-52.)

This grievance does not grieve the equal protection issue presented in Count 16. Therefore, it cannot be said to exhaust Plaintiff's administrative remedies for this count.

### iv. Grievance 20062915995

In his informal level grievance, Plaintiff states that administrative segregation is not intended to be used as punishment, but should mirror protective segregation. (Doc. # 115 at 53.) This grievance was rejected as being duplicative. (*Id.*) The first and second level grievances reiterate the complaint asserted at the informal level. (*Id.* at 54-55.)

This grievance likewise fails to address the equal protection issue that forms the basis of Count 16, and therefore did not serve to exhaust Plaintiff's administrative remedies.

### v. Grievance 20062870192

In this informal level grievance, Plaintiff claims that institutional and operational procedures do not coincide with administrative regulations or the law. (Doc. # 115 at 56.) This complaint is reiterated at the next two levels. (*Id*. at 57-58.)

Like the grievances discussed above, grievance 20062870192 fails to discuss the equal protection issue that forms the basis for Count 16. Plaintiff did not exhaust his administrative grievances on Count 16 through this grievance.

### vi. Grievance 20062919976

At the informal level, Plaintiff complains that the policy being instituted in segregation units for disciplinary segregation deprives inmates of canteen items and visits and is unlawful. (Doc. # 115 at 59-61.) This complaint is reasserted in the first and second level grievances. (*Id*. at 62-63.)

This grievance similarly fails to exhaust Plaintiff's administrative remedies for Count 16 as there are no facts contained within it that would put prison officials on notice of an equal protection claim as it is asserted in Count 16.

### d. Conclusion

Defendants' motion to dismiss Count 16 for failure to exhaust administrative remedies should be granted.

### 7. Count 20

#### a. Summary of Claim

In Count 20, Plaintiff has been allowed to proceed with a First Amendment retaliation claim against defendants Baca, Clarkson, Cool, Cox, Hendley, Hensen, Kuoloia, Liverani, Lona, Morrow, Neven, Skolnik and Walker.

Here, Plaintiff alleges that Defendants have refused to provide Plaintiff copies of institutional policies (IPs) and ARs, and he contends that the IPs are not in accordance with

the ARs, Nevada Revised Statutes or state and federal law. (Doc. # 9 at 51.) He also claims that Defendants frequently add rules through IPs or ARs to punish inmates and deprive them of privileges, property, and access to programs. (*Id*.)

The court found on screening that the allegation that Defendants refuse to provide him with copies of IPs and ARs, standing alone, does not state a claim; however, to the extent he alleges that he was not provided with the policies and regulations in retaliation for his "pursuit of justice," Plaintiff states a retaliation claim. (Doc. # 6 at 19-20.)

### b. Summary of Argument

Defendants argue that Plaintiff has not grieved that NDOC denied him copies of these policies and regulations or added rules to punish inmates and deprive them of various privileges and programs. (Doc. # 109 at 10-11; Nash Decl. (Ex. B), Doc. # 109-2 at 4 ¶ 10.) Instead, they claim that the only retaliation issue Plaintiff has grieved is that HDSP officers tore up his cell in retaliation for filing lawsuits. (*Id*.)

Plaintiff claims he did grieve the retaliation claim and references the following grievances: 20062876092, 20062724550, 20062852608, 20062918703, 20062959746, 20062945548, and 20062915698. (Doc. # 115 at 8-9; Antonetti Decl., Doc. # 124 at 7 ¶ 12.)

In their reply, Defendants argue that none of the referenced grievances address the withholding of copies of policies or administrative regulations on the basis of retaliation for Plaintiff's "pursuit of justice." (Doc. # 133 at 6.)

### c. Analysis

### i. Grievance 20062876092

This grievance involves Plaintiff's accusation that prison officials were retaliating against him for taking legal action by tearing up his cell, moving him around, and withholding his mail. (Doc. # 115 at 91.) This grievance does not allege that he was being retaliated against by withholding prison policies, procedures or regulations from him. Accordingly, this grievance did not exhaust his administrative remedies for Count 20.

///

### ii. Grievance 20062724550

Here, Plaintiff provides the NOTIS summary for grievance 20062724550, which only reflects an informal level grievance where Plaintiff's grievance is summarized as saying that the grievance system is a joke. (Doc. # 115 at 94.) This grievance did not complaint of retaliation by withholding institutional policies, procedures or regulations. Therefore, this grievance did not exhaust Plaintiff's administrative remedies for Count 20.

### iii. Grievance 20062852608

Plaintiff references this grievance in his opposition, but it is not contained within his exhibits. Defendants did submit a copy of the NOTIS summary of this grievance as Exhibit E to their reply brief. (Doc. # 133-5.) The summary of the informal level grievance merely states that Plaintiff claimed NDOC was "frustrating the process." (Doc. # 133-5 at 7.) There is no indication that this grievance related to a claim of retaliation by withholding institutional policies, procedures and regulations from Plaintiff. Therefore, Plaintiff did not exhaust his administrative remedies through grievance 20062852608.

### iv. Grievance 20062918703

In this grievance, Plaintiff complains that HDSP was not following proper grievance procedures and was frustrating the exhaustion process. (Doc. # 115 at 95.) Again, this grievance does not put prison officials on notice that Plaintiff is complaining of being retaliated against by withholding institutional policies, procedures and regulations because of Plaintiff's "pursuit of justice." The grievance cannot be said to have exhausted Plaintiff's administrative remedies for Count 20.

### v. Grievance 20062959746

Plaintiff referenced this grievance in his opposition, but did not include a copy of it in his exhibits. Nevertheless, Defendants provided a copy of the NOTIS summary as Exhibit F to their reply brief. (Doc. # 133-6 at 5.) This grievance centers around Plaintiff's claim that he was being retaliated against by being left in segregation. (*Id*. at 5.) In response, he was told that he came from Ely State Prison (ESP) with "close custody" status and would remain

as such until he was returned to ESP for classification. (*Id.* at 4.) Plaintiff was apparently taken to HDSP from ESP so that he could attend court proceedings. (*Id.*)

In the first level grievance, Plaintiff claimed he was entitled to periodic classification review. (*Id.* at 3.) He was advised that pursuant to AR 506.01, he would be reclassified at least every six months. (*Id.* at 2.)

The records do not reflect the filing of a second level grievance.

First, while this grievance summary includes the word "retaliation," the grievance clearly centers on Plaintiff's classification status. Moreover, there is no reference to retaliation by withholding policies, procedures or regulations.

Second, Plaintiff did not complete the grievance process through the second level.

Third, this grievance was filed in 2013, some three years after he submitted his complaint for filing in this matter.

In light of these infirmities, Plaintiff did not exhaust his administrative remedies through grievance 20062959746.

### vi. Grievance 20062945548

This gravamen of this grievance centers on the fact that Plaintiff was remanded into custody of the Clark County Detention Facility following a court appearance, apparently related to a new alleged criminal offense that occurred in the holding cell of the jail. (Doc. # 115 at 97.)

First, this grievance is not related to a claim of retaliation by withholding institutional policies, procedures and regulations.

Second, this grievance was filed in 2012, some two years after Plaintiff filed his complaint in this matter.

Therefore, grievance 20062945448 did not exhaust Plaintiff's administrative remedies for Count 20.

///

///

### vii. Grievance 20062915698

While Plaintiff refers to grievance 20062915698 in his opposition (Doc. # 115 at 9), this grievance is not included in his Exhibit F. A review of the entirety of his exhibits revealed that the grievances is included in Exhibit G. (Doc. # 115 at 107-11.)

In the informal level grievance, Plaintiff asserts that the "lock down" and "disciplinarian/punishment philosophy of running prisons is creating a dangerous system..." (Doc. # 115 at 107.) He went on to state that isolation causes psychosis. (*Id*.)

In the first level grievance, he repeated this complaint. (*Id*. at 109.) He was instructed to resubmit the first level grievance and attach the informal response. (*Id*.) In the next first level grievance submitted, he states that he planned to keep his copy of the grievance and accused the respondents of frustrating the grievance process. (*Id*. at 108.) He went on to reiterate the complaint asserted in the informal level. (*Id*.)

These complaints were reiterated in the second level grievance. (*See id*. at 110-111.)

This grievance is in no way related to the claim asserted in Count 20 that Plaintiff was being retaliated against by the withholding of prison policies, procedures and regulations. Moreover, this grievance was completed in 2011, well after Plaintiff submitted his complaint for filing in this action. Therefore, grievance 20062915698 did not exhaust Plaintiff's administrative remedies.

### d. Conclusion

Defendants' motion to dismiss Count 20 as a result of Plaintiff's failure to exhaust his administrative remedies should be granted, and Count 20 should be dismissed without prejudice.

## B. Summary Judgment- Counts 1 and 2

### 1. Count 1

#### a. Summary of Argument

In Count 1, Plaintiff was allowed to proceed with an Eighth Amendment claim based on medical care and isolation against defendants Clarkson, Cool, Hendley, Liverano, Lona,

and Morrow.

Here, Defendants argue that Plaintiff alleges that he has been prescribed the "pursuit of music and art to deal with his problems," asserting that he requires a certain type of paper on which to draw as part of his therapy. He further contends Defendants have denied him this drawing paper in contravention of physicians' orders, leading to "permanent damage to [his] mental health." He claims "the Psychologist and Psychiatrist have suggested [he] take anti-psychotic and or anti-depression medications which would not be needed but for the Defendants' neglect and indifference."

Defendants maintain Plaintiff has never been prescribed any such art therapy, including drawing paper. They provide the declaration of Dr. Hoover, who states, that as a matter of policy, the High Desert State Prison (HDSP) mental health staff does not prescribe art therapy. (*Id.* at 11, Ex. E.)

Plaintiff argues that issues of fact remain to be determined so that summary judgment is not appropriate as to Count 1. (Doc. # 115 at 9.) Plaintiff also contends that the mental health file submitted by Defendants is incomplete as it does not contain the psychiatric review taken during intake in 2004. (*Id.* at 9-10.) Nor does it contain the information obtained in interviews of Plaintiff by psychiatric personnel. (*Id.*)

Plaintiff reiterates that it was in his discussions with Dr. Klein that the topic of art and music therapy was raised as an alternative to treatment by medication. (*Id.* at 10; Antonetti Decl., Doc. # 124 at 6 ¶ 8.)

**b. Analysis**

Defendants fail to address the entirety of Plaintiff's allegations as they were construed in Count 1. Defendants are not permitted to cherry pick allegations that entitle them to summary judgment, but instead must review the allegations deemed by the court on screening to state a colorable claim, and then argue they are entitled to summary judgment as a matter of law.

While Count 1 does make reference to a discussion Plaintiff had with Dr. Klein

regarding the pursuit of art and music therapy in lieu of mental health medication and that he was deprived of supplies to actually perform these tasks, his Eighth Amendment claim is much broader than that. Plaintiff's chief complaint centers on the inadequacy of mental health care afforded him. He claims that he was seen by mental health professionals only eight times over a period of five years, which he contends contravenes NDOC's own regulations. He also claims he has been placed on antipsychotic medications, which would not be necessary if he were receiving regular mental health care.

Another flaw with Defendants' motion concerning Count 1 is that to support their motion they refer the court generally to Plaintiff's mental health records without specifying which record(s) support their argument.

Defendants also provide the Declaration of Dr. Laurie Hoover, Ph. D., in support of their motion. (Hoover Decl. (Ex. E), Doc. # 109-5 at 2.) Dr. Hoover is employed as a psychologist at HDSP, and has access to mental health records. (*Id.* ¶ 1.) She merely states that the mental health progress notes submitted under seal do not reflect that Plaintiff "was ever prescribed any mental health treatment during his time at HDSP." (*Id.* ¶¶ 4-5.) She goes on to assert that "[a]s a matter of policy, HDSP does not prescribe art therapy, including any therapy requiring the use of special drawing paper." (*Id.* ¶ 6.)

While Plaintiff's mental health records may not have specifically been prescribed art therapy or special drawing paper, the mental health progress notes do mention that Plaintiff indicated he did not want medication and instead wanted to pursue a form of art therapy and requested this paper. Moreover, Plaintiff maintains that he in fact had this discussion about pursuing alternative therapies in lieu of medication with Dr. Klein, and that the mental health file submitted by Defendants is incomplete.

Plaintiff's mental health progress notes also indicate that Plaintiff was complaining of inadequate treatment and the fact that his needs were not being met, which supports Plaintiff's claim.

In sum, the court finds that Defendants have not met their burden of establishing

39

they are entitled to summary judgment as a matter of law by picking one allegation out of his Eighth Amendment claim and claiming it is false. They ignore the remainder of Plaintiff's allegations, in particular the central allegation that he was not given adequate mental health care. They likewise ignore the factual disputes that exist as to the alternative therapy issues and the provision of adequate health care in general identified in Plaintiff's opposition briefing and declaration.

For these reasons, summary judgment should be denied as to Count 1.

**2. Count 2**

### a. Summary of Argument

In Count 2, Plaintiff was allowed to proceed with a First Amendment access to courts claim against Defendants Baca, Clarkson, Cool, Cox, Hendley, Hensen, Kuoloia, Liverani, Lona, Morrow, Neven, Skolnik, and Walker.

In this count, Plaintiff alleges he has been denied law library access and legal materials such as books, paper, pens and envelopes, and he has been denied legal assistance, by virtue of his housing classification to administrative segregation. He claims that as a result his petitions for habeas corpus and civil rights actions have been dismissed.

Defendants argue that Plaintiff cannot demonstrate actual injury, which is a prerequisite to asserting this claim, and moreover, he has not been denied access to the law library,  legal research materials or legal supplies. (Doc. # 109 at 12-13.)

In support of their motion, Defendants submit the declaration of defendant Charlene Clarkson, a former law librarian at HDSP. (Clarkson Decl. (Ex. H), Doc. # 109-8 at 2-3.) She indicates that she is familiar with Plaintiff as she would regularly visit the administrative segregation units at HDSP to take requests for inmate legal research and provide case law pursuant to that research. (*Id*. at 2 ¶ 2.) According to Ms. Clarkson, with few exceptions, these trips to the administrative segregation unit occurred on a daily basis because administrative segregation inmates are precluded from physically accessing the law library. (*Id*.) During such a visit, these inmates were permitted to request copies of case law and

other jurisprudence to keep in their cells. (*Id.* ¶ 3.) Inmates in administrative segregation could keep up to ten cases at a time in their cells. (*Id.* ¶ 4.)

General population inmates, on the other hand, could access the law library twice a week, and because of this were permitted to exchange a maximum of twenty cases per week. (*Id.* ¶¶ 4-5.) With daily visits, administrative segregation inmates could exchange a maximum of seventy cases per week. (*Id.*)

To the extent Plaintiff claims he was denied adequate access to legal supplies, Ms. Clarkson states that Plaintiff, like all other indigent inmates, was entitled to a monthly allotment of legal supplies, including envelopes, writing paper, carbon paper, and a pen, which were delivered when the inmate requested them, once a month. (*Id.* ¶ 6.) She contends she never denied Plaintiff's request for his monthly allotment or any research request made by Plaintiff, save a request which would have exceeded the ten-case limit described above. (*Id.* at 2-3 ¶ 7.)

Plaintiff argues that the law library staff at HDSP have no legal training or knowledge of the law and do not assist in preparing motions. (Doc. # 115 at 11.) In addition, he claims that administrative segregation inmates cannot have access to books at all. (*Id.*)

He also disputes Ms. Clarkson's statement that administrative segregation inmates could have ten cases in their cell at a time, instead claiming he could only keep five cases in his cell. (*Id.* at 12; Antonetti Decl., Doc. # 124 at 6 ¶ 9.) This is supported by a law library supply and book request form that he submitted on January 12, 2011, when he requested various items and was told in response that he was only permitted to have five items at a time. (Doc. # 115 at 112.) Moreover, he contends that the process of requesting and receiving the items can take weeks, thereby limiting the number of cases an inmate actually is able to obtain. (Doc. # 115 at 12.)

Plaintiff also takes issue with the "kiting system" in place for administrative segregation inmates to obtain documents. (Doc. # 115 at 13.) For example, he states that he made a request for local rules, and in response was asked which numbers he was

41

1  requesting. (*Id.*) Being unfamiliar with the law, he had no idea which number rule he

2  needed. (*Id.*)

3  He also disputes Ms. Clarkson's statement that she never denied Plaintiff's requests

4  for research materials. Plaintiff provides a NOTIS report containing a summary of a

5  grievance he submitted concerning a grievance he submitted where he claimed he had been

6  kiting Ms. Clarkson for case law, to no avail, and that Ms. Clarkson refused to speak to him.

7  (Doc. # 115 at 116.) He also submits various kites where he requested access to law library

8  materials and supplies. (Doc. # 115 at 118-121

9  Regarding the provision of legal supplies, Plaintiff submitted a summary of a

10  grievance where he claims that Ms. Clarkson informed him that she only processes requests

11  for these supplies on the fifth of the month, and if the form is not submitted by then, the

12  inmate must go without until the next month. (Doc. # 115 at 117, *see also* 122-129, 131-133;

13  Antonetti Decl., Doc. # 124 at 6-7 ¶ 9.)

14  He further contends that the provision of supplies is inadequate. (Doc. # 115 at 13-

15  14.) Indigent inmates are given five envelopes and fifty sheets of paper, which he claims is

16  insufficient for his eight active cases. (*Id.* at 14.)

17  **b. Analysis**

18  Inmates have a constitutional right of access to the courts. *See Lewis v. Casey*, 518

19  U.S. 343, 346 (1996). To establish a violation of the right of access to the courts, a prisoner

20  must establish that he or she suffered an actual injury, a jurisdictional requirement that

21  flows form the standing doctrine and may not be waived. *Id.* at 348 (citation omitted); *see*

22  *also Alvarez v. Hill*, 518 F.3d 1152, 1155 n. 1 (9th Cir. 2008) (citation omitted) (explaining,

23  "[f]ailure to show that a 'non-frivolous legal claim ha[s] been frustrated' is fatal" to a claim

24  of denial of access to courts). "Actual injury" is defined as "actual prejudice with respect to

25  contemplated or existing litigation, such as inability to meet a filing deadline or present a

26  claim." *Id.* at 348 (citation and internal quotations omitted). Delays in providing legal

27  materials or assistance that result in actual injury are "not of constitutional significance" if

28

1  "they are the product of prison regulations reasonably related to legitimate penological

2  interests." *Lewis*, 518 U.S. at 362.

3       The right of access to the courts is limited to non-frivolous direct criminal appeals,

4  habeas corpus proceedings, and § 1983 actions. *See Lewis*, 518 U.S. at 353 n. 3, 354-55;

5  *Simmons v. Sacramento Cnty. Super. Ct.*, 318 F.3d 1156, 1159-60 (9th Cir. 2003) ("a

6  prisoner has no constitutional right of access to the courts to litigate an unrelated civil

7  claim"). The right of access to the courts is only a right to bring complaints to the federal

8  court and not a right to discover such claims or to litigate them effectively once filed with a

9  court. *See Lewis*, 518 U.S. at 354-55; *Cornett v. Donvan*, 51 F.3d 894, 898 (9th Cir. 1995).

10       Plaintiff has submitted a grievance where he contends that his lack of access to the

11  law library has resulted in claims being dismissed from litigation. (Doc. # 115 at 136.) To

12  support his position that he has suffered actual injury as a result of the complained-of

13  conduct, he submits an order of the United States District Court in *Antonetti v. Radosta*,

14  2:09-cv-2031-RLH-PAL, where it was noted that Plaintiff submitted an application to

15  proceed in forma pauperis and civil rights complaint, but failed to include a proper signed

16  financial certificate executed by an authorized prison official or a copy of his inmate trust

17  account. (Doc. # 115 at 142-143.) The Clerk was ordered to send Plaintiff a blank application

18  form to proceed in forma pauperis for incarcerated litigants and blank civil rights complaint

19  form with instructions. (*Id.*) The action was dismissed without prejudice so that Plaintiff

20  could commence a new action by paying the filing fee or submitting corrected

21  documentation. (*Id.*)

22       This order dismissing the complaint without prejudice cannot support a claim of

23  actual injury. The court dismissed the matter *without prejudice*, specifically affording

24  Plaintiff an opportunity to correct the deficiencies with respect to the in forma pauperis

25  application and complaint.

26       Plaintiff then submits an order from the Ninth Circuit in *Antonetti v. Skolnick*, No.

27  09-17707, District Court Case 2:09-cv-02031-RLH-PAL, stating that Plaintiff, as appellant,

28

failed to perfect his appeal when he did not respond to the court's order of February 9, 2010. (Doc. # 115 at 144.)

This is followed by the February 9, 2010 order from the Ninth Circuit in *Antonetti v. Skolnick*, No. 09-17707, District Court Case 2:09-cv-02031-RLH-PAL where the motion to proceed in forma pauperis was denied because the appeal was found to be frivolous. (*Id*. at 145.) As a result of the finding of frivolity, the Ninth Circuit ordered Plaintiff to pay the docketing and filing fee or the action would be dismissed. (*Id*.)

Here, the appeal was found to be frivolous, so that Plaintiff was not entitled to in forma pauperis status on appeal. The appeal was then dismissed when Plaintiff did not pay the filing fee. As indicated above, the right of access to courts in the context of appeals is limited to non-frivolous direct criminal appeals. *See Lewis*, 518 U.S. at 353 n. 3, 354-55. This was an appeal of a civil rights proceeding, and more importantly, it was determined to be frivolous. Therefore, Plaintiff cannot be said to have suffered actual injury in connection with the dismissal of this appeal.

In the absence of actual injury, Defendants' motion to dismiss Count 2 should be granted.

### III. RECOMMENDATION

**IT IS HEREBY RECOMMENDED** that the District Judge enter an Order **GRANTING IN PART AND DENYING IN PART** Defendants' motion, as follows:

(1) Defendants' motion to dismiss Count 4 on the basis that Plaintiff failed to exhaust his administrative remedies should be **DENIED**; however, the denial should be without prejudice to permit Defendants an opportunity to demonstrate that Count 4, or some portion of it, is barred by the applicable statute of limitations;

(2) Defendants' motion to dismiss the equal protection claim in Count 7 should be **GRANTED** and the claim should be **DISMISSED WITHOUT PREJUDICE** as Plaintiff has failed to properly exhaust his administrative remedies;

(3) Defendants' motion to dismiss Count 9 on the basis that Plaintiff failed to

44

exhaust his administrative remedies should be **DENIED**;

(4)Defendants' motion to dismiss Count 13 on the basis that Plaintiff failed to exhaust his administrative remedies should be **DENIED;**

(5) Defendants' motion to dismiss Count 14 on the basis that Plaintiff failed to exhaust his administrative remedies should be **DENIED;**

(6) Defendants' motion to dismiss Count 16 for failure to exhaust administrative remedies should be **GRANTED** and Count 16 should be **DISMISSED WITHOUT PREJUDICE**;

(7) Defendants' motion to dismiss Count 20 for failure to exhaust administrative remedies should be **GRANTED** and Count 20 should be **DISMISSED WITHOUT PREJUDICE**;

(8) Defendants' motion for summary judgment as to Count 1 should be **DENIED**; and

(9) Defendants' motion for summary judgment as to Count 2 should be **GRANTED**.

The parties should be aware of the following:

1.     That they may file, pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule IB 3-2 of the Local Rules of Practice, specific written objections to this Report and Recommendation within fourteen (14) days of receipt.  These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2.     That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1), Fed. R. App. P., should not be filed until entry of the District Court's judgment.

**DATED: January 24, 2014.**

_____
**WILLIAM G.  COBB**
**UNITED STATES MAGISTRATE JUDGE**